WILLIAM W. COX, APPELLEE, v. FRANK E. MOORES ET AL., APPELLANTS.

FILED MAY 4, 1898. No. 9923.

Removal of Officer: INJUNCTION AGAINST BOARD. In advance of consideration of charges against an officer, by a board having power to hear such charges, and upon finding them sustained, to re-

move the officer thereby affected, a court of equity has no juris-
diction, upon the application of such officer, to enjoin action on
the pending charges because of prejudice, abuse of discretion,
and irregularities in procedure, alleged to be about to be in-
dulged in by such board in the hearing contemplated.

APPEAL from the district court of Douglas county.
Heard below before SCOTT, J. *Reversed.*

*W. J. Connell, George A. Day,* and *I. J. Dunn,* for appel-
lants.

*McCoy & Olmsted, contra.*

RYAN, C.

In his petition, in which the members of the board of
fire and police commissioners and the chief of police of
Omaha were made defendants in the district court of
Douglas county, William W. Cox, alleged that on Sep-
tember 17, 1895 he had been appointed by the board of
fire and police commissioners of the city of Omaha chief
of detectives on the police force of said city; that he
duly qualified as such officer, and ever since said date
has been, and now is, the only lawful and *de jure* chief
of detectives aforesaid; that on April 20, 1897, D. D.
Gregory, J. H. Peabody, William C. Bullard, and R. E.
L. Herdman were appointed members of the board of
fire and police commissioners of said city and entered
upon the discharge of their duties as members of said
board. The parties whose proposed actions it was al-
leged rendered necessary the restraint of an injunction
were Gregory, Peabody, Bullard, and Herdman. These
four members of the board aforesaid, and the chief of
police, it was alleged, were not republicans, while plain-
tiff affiliated with that party, for which reason said de-
fendants had conspired among themselves to remove
plaintiff from office and in his place to install a partisan
of their own political faith. There were described vari-
ous steps taken by said defendants to effect the removal
of plaintiff from his office and to supplant him therein,

but these need not all be particularly described, for none of them were more than evidence of the existence of the conspiracy above charged. That the nature of this evidence may be illustrated, we select from this part of the petition the allegation, in substance, that, to accomplish their purpose of effecting plaintiff's removal from office, the said four members of the aforesaid board, other than the mayor, procured the chief of police to file with said board the following unverified charge, to-wit:

"AMENDED CHARGES AGAINST W. W. COX, CHIEF OF DETECTIVES.

"OMAHA, NEB., July 10, 1897.

"To the Honorable Board of Fire and Police Commissioners —GENTLEMEN: The following amended charges are hereby preferred against W. W. Cox, chief of detectives: That on or about April 6, 1897, he was sent to Nebraska City to bring back one Belle Mason, who was wanted here for the larceny of several hundred dollars from one J. W. Millstead. Millstead gave him $25 to defray the expenses of bringing her back. Millstead complained to Captain Haze that Cox had insisted that Belle Mason gave him $25 to have the case dismissed. I saw Belle Mason and she told me that Cox told her that if she would give him $25 there would be nothing to the case and she would be discharged and that he would see County Attorney Day and see that it was done. When Captain Haze told me this I called Sergeant Cox into the office and accused him of this, and he denied it and said the $25 he asked was a reward. Afterwards I brought Millstead and Cox together, and Millstead said that Cox had made this demand. Belle Mason afterwards said the same thing. I then requested these parties not to give any money to any officer, as it was not necessary. I also instructed Sergeant Cox to return all money to Millstead that was left of the $25 and which was not needed to defray the expenses of bringing Belle Mason back. Belle was afterwards dismissed, and I understand that she

and Millstead have left the city. That the said Cox was and is incompetent to discharge the duties of chief of detectives force of the city of Omaha in this: That he has during all the time wholly failed to conform to or enforce the rules and regulations of the board of fire and police commissioners governing the chief of detectives and the detective force of the said city. He has wholly failed to issue proper and uniform order covering the detective force; wholly failed to require the force detailed to his special command to make daily reports in writing of their services or the method of discharging their duties therein, or to establish that degree of efficiency in the detective department that the service required. That he was wholly neglectful of his duties as chief of detectives in this: He was absent at times from his office in said service for a period of days and as such chief of detectives compelled the detective force to depend upon others for direction, counsel, or advice; that the said Cox wholly failed from time to time to give such directions as should rightfully belong to his duties and come from him in the direction of said detective force; that he was frequently engaged in political controversies and contests arising in said city—held himself out as a politician, and was, in fact, an offensive partisan and politician rather than a policeman and an efficient chief of detective force.

"I am, gentlemen, your obedient servant,

"A. T. SIGWART,
"*Chief of Police.*"

For the purpose of further illustrating and enforcing his averments of the existence of a conspiracy against him, plaintiff, in his petition, described certain motions made by him for more specific statements in the above charge, the names of the witnesses by whom such charges were to be sustained, and the ruling of the board of fire and police commissioners thereon, in each instance in denial of the order asked, and the fact that due exceptions were taken. It was alleged in the petition that

unless the defendants were restrained from so doing they, as the board of fire and police commissioners of the city of Omaha, would continue in their irregular and oppressive course until plaintiff would be deprived of his office with its honors and emoluments.

We have not attempted to state in full the averments of the petition, for, though abbreviation has been attempted, the resulting epitome has not successfully compressed all we have attempted to summarize within a reasonably brief space. What has been said, however, will serve to render clear the general observations with reference to the petition as a whole, that its charges of threatened infractions of plaintiff's rights were reducible to two classes: First, the accomplishment of his removal from office pursuant to a predetermined course of action; second, the adoption of irregular and illegal methods by means of which the desired result should be obtained. It may be urged that the fact of the difference in the political affiliations of the parties should be taken into account, but this cannot be in this case, for in that event there must be considered what constitutes a republican, a populist, and a democrat—propositions which might be difficult of solution in view of past and present political conditions. Reduced to its most concise terms, the petition charged that the board of fire and police commissioners were about to, and unless enjoined would, by irregular and illegal proceedings, remove plaintiff from office. It was not charged that this board by regular proceedings had not authority to order and enforce this removal. The prayer of the petition need not be set out, for its scope is sufficiently reflected in the following portion of the decree entered upon the final hearing, to-wit:

"It is considered and decreed by the court that the defendants, and each of them, and their successors in office and their employés, agents, and subordinates, be, and they are hereby, enjoined perpetually from in any way annoying or harassing or interfering with the plaintiff William W. Cox in and about his office of chief of detec-

tives of the police force of the city of Omaha, and in and about his performance of the duties of said office, and in and about his rights, privileges, benefits, and emoluments accruing to him by virtue of said office, and from proceeding to a trial of this plaintiff upon pretended charges and pretended amended charges filed with said board on the 28th day of June, 1897, respectively described in the petition, and from permitting to be refiled the Blackmore and other charges described in the petition, or any amendment of said Blackmore or other charges, and from proceeding to a hearing on any of said charges, and from making any finding or order of removal, suspension, or discipline of this plaintiff respecting his said office, or from the said police force, on account of the pretended charges and amended charges of June 28, 1897, and July 10, 1897, and on account of the aforesaid Blackmore charges, or on account of any charges refiled or amendatory of any one of said charges, and from permitting to be filed or setting for trial and from hearing any sham, frivolous, insufficient, or unlawful charges or any other charge in which it is not stated specifically and definitely the facts showing the time, place, and manner in which this plaintiff, in respect of his duties in his office of chief of detectives, has infringed and broken some specific rules or rule, regulation, or law of, or governing said board of fire and police commissioners and said police force, and from denying to this plaintiff the right to be heard in person or by attorneys or counsel upon any proceeding that may be brought or pending against him before the said board of fire and police commissioners and from denying him a full opportunity to make all defenses he. may have against any charges that may be brought against him," etc.

The relief granted in the above decree, in effect, is the forbidding in advance of proceedings in certain respects indicated as being irregular or illegal, or both. If by his petition plaintiff had averred that the charges preferred against him were untrue, the district court, in line with

the course pursued in granting the above relief, might have adjudged that charges were unfounded and thereupon might have enjoined further inquiry into that question.    The action was one for equitable relief, and it is a familiar rule that where a court of equity has obtained jurisdiction of the parties and subject-matter for one purpose, it will administer complete relief.    If, therefore, the district court, in advance, could consider what mistakes the board was about to commit in its procedure and prescribe a method of prevention, it could, upon proper issues tendered by the petition, determine in what respect the chief of detectives was guilty and how he should be punished, and ought to have impressed upon the board the impropriety of determining otherwise.    In either case, if the board has committed errors, the proper relief, if any, must be sought upon a record showing the actual existence, and not a mere anticipation, of such errors, no matter how well founded the apprehension may be. With respect to one part of the decree and that the part which prevents further proceedings, it is proper to remark that a court of equity should not interfere by injunction to prevent the removal of an officer when the power of removal is vested in a board or officer.    (*In re Sawyer*, 124 U. S. 200; *Delahanty v. Warner*, 75 Ill. 185; *Reemelin v. Mosby*, 47 O. St. 570; *Heffran v. Hutchins*, 43 N. E. Rep. [Ill.] 709; *Trimble v. People*, 34 Pac. Rep. [Colo.] 981; *In re Fire & Excise Com'rs*, 36 Pac. Rep. [Colo.] 234.)    The case of *Stahlhut v. Bauer*, 51 Neb. 64, is not in conflict with the cases just cited, for it was decided on the principle that the members of the city council who proposed to determine whether or not the mayor should be removed did not possess the power arrogated to themselves.    The present case, in all its bearings, is governed by the principle above stated as to the limitations of the powers of a court of equity.    The judgment of the district court is reversed and the action is dismissed.

REVERSED AND DISMISSED,