LEE E. EMERSON AS GOVERNOR OF THE STATE OF VERMONT
*v.* ORRIN B. HUGHES ET ALS.

(90 A2d 910)

May Term, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and CUSHING, JJ.

Opinion Filed July 29, 1952.

*F. Ray Keyser* and *F. Ray Keyser, Jr.* (Of Counsel) for the petitioner.

*Bernard R. Dick* for the petitionees.

JEFFORDS, J. This is a petition for a writ of prohibition whereby it is sought to prohibit the petitionees from proceeding any further with a certain bill in chancery for an injunction.

The petitionees are Judge Hughes, as the chancellor who issued the temporary injunction in question which is later set forth, Peter A. Bove, individually and as a member of the liquor control board of this State and Bernard R. Dick as attorney for the latter. As Mr. Bove is the petitionee whose interests are by far the most at stake in this action we will hereafter, unless otherwise noted, refer to the parties as petitioner and petitionee as though Mr. Bove were the sole petitionee.

The events as disclosed by the record leading up to the bringing of this petition are as follows:

The petitioner instituted removal proceedings against the petitionee as a member of the liquor control board. This proceeding was brought under the provisions of V. S. 47, § 6131 which are as follows: "REMOVAL. After notice and hearing the governor may remove a member of the liquor control board for incompetency, failure to discharge his duties, malfeasance, immorality or other cause inimical to the general good of the state. In case of such removal he shall appoint a person to fill the unexpired term." Written notice of the proceeding, dated March 18, 1952, setting forth specified charges, was served on the petitionee that same day. He was therein notified to appear before the petitioner on March 31 in the executive chambers in Montpelier to show cause why he should not be removed from his office.

On March 28 the petitionee by his attorney, Bernard R. Dick, brought a bill in chancery praying for the granting of a temporary injunction restraining the petitioner from holding the hearing under the above mentioned statute. The prayer was granted and an order was made by Judge Hughes restraining the petitioner from holding the hearing. The order, which was dated the same day as the bill,

was to continue until further order of the court. This order was served on the petitioner on the same day it was issued.

On April 14 the petitioner brought this petition. A temporary order was granted prohibiting the petitionees from proceeding any further in their bill for an injunction and the order thereon until further order of Court. This order was served on the petitionees the day it was issued.

The broad question to be here determined is whether the court of chancery had jurisdiction to grant the temporary injunction restraining the petitioner from conducting the hearing in question. *Petition of Green Mt. Post,* 116 Vt 256, 258, 73 A2d 309; *Bullard* v. *Thorpe,* 66 Vt 599, 601, 30 A 36, 25 LRA 605; 42 Am Jur 179; 73 CJS 115.

The petitioner in his main brief claimed that the judicial branch of the government has no power to encroach upon the powers and duties of the executive branch. On oral argument, however, counsel for the petitioner conceded that under certain facts and circumstances and in a proper action at law his actions as governor would be subject to judicial control. Because of this concession certain cases much relied upon by the petitionee need not be considered. Thus the only remaining ground for the claim of error of the chancellor in granting the injunction advanced by the petitioner that warrants consideration is that equity has no jurisdiction to enjoin the removal of a public officer.

It is held by the overwhelming weight of authority that equity does not have such jurisdiction. For illustrative cases see *In re Sawyer,* 124 US 200, 8 S Ct 482, 31 L ed 402; *White* v. *Berry,* 171 US 366, 18 S Ct 917, 43 L ed 199; *Walton* v. *House of Reps.,* 265 US 487, 44 S Ct 628, 68 L ed 1115; *Morgan* v. *Nunn,* 84 F 551; *Cox* v. *Bd. of Fire & Policy Comr's.,* 55 Neb 34, 75 NW 35; *Heffran* v. *Hutchins,* 160 Ill 550, 43 NE 709; *Sharpe* v. *Los Angeles,* 136 Cal App 732, 29 P2d 797; *Miller* v. *Ala. State Bd.,* 210 Ala 619, 98 S 893; See also 43 Am Jur Public Officers, § 219; 43 CJS 647; High on Injunctions, 4th ed. § 1313, p. 1329; Pomeroy Eq. Jur., 4th ed. § 1760, (337).

The petitioner in his main brief relied largely, if not wholly, in support of his claim of lack of jurisdiction in equity over cases such as this on the ground that equity will take jurisdiction only in cases in which property rights are involved and that no such

right exists in the holding of a public office. The petitionee relies largely on *Kenyon* v. *Chicopee,* 320 Mass 528, 70 NE2d 241, 175 ALR 430, in support of his claim that equity will take jurisdiction in cases involving personal as well as property rights. The opinion in that case was written by the present Chief Justice Qua of that court and contains a thorough examination of the rule as claimed by the petitioner and the cases supporting it, including some from that commonwealth. The holding in the case was that equity will protect personal rights by injunction upon the same conditions upon which it will protect property rights. It is then stated that in general "these conditions are, that unless relief is granted a substantial right of the plaintiff will be impaired to a material degree; that the remedy at law is inadequate; and that injunctive relief can be applied with practical success and without imposing an impossible burden on the court or bringing its processes into disrepute."

That case was a suit by Jehovah's Witnesses against a city and certain officers thereof to declare unconstitutional an ordinance and for injunctive relief against repeated prosecutions under the ordinance for distributing on the streets leaflets advertising free religious lectures. It was held that the ordinance was unconstitutional and that an injunction should be granted.

In his reply brief the petitioner makes the claim that equity has no jurisdiction over political questions or issues. This is one of the grounds listed by Professor Pomeroy in his work, *supra,* for lack of jurisdiction in equity over cases involving the removal of public officers. It is also the ground stated in several of the cases first above cited for their holdings to that effect. In the Kenyon case no political right or question was involved nor was any such in the illustrative cases referred to in the opinion in support of the holding made therein. That there is a well recognized distinction between the jurisdiction of equity over questions involving what might be termed mere or purely personal rights and those involving political questions or issues is illustrated in 28 Am Jur under the title "Injunctions." Sec. 21 is entitled "Personal Rights" and deals with the jurisdiction of equity over "mere personal rights." Sec. 22 is entitled "Political Rights" and deals with such jurisdiction in cases "where the rights or questions involved are purely political." It is stated that in such cases a court of equity will

not, as a rule, assume jurisdiction. That the rights and questions in the case at hand are political is not and cannot be questioned. The only exception that we have found to the general rule that equity will not take jurisdiction over cases involving political rights or questions is that recognized in our jurisdiction to the effect that injunctive relief may be granted to an incumbent of a public office to protect his possession against the interference of an adverse claimant whose title is in dispute, until the latter shall establish his title at law. *Brown* v. *Rock,* 99 Vt 415, 418, 133 A 245.

■ Our holding is that equity does not as a general rule have jurisdiction to enjoin the removal of a public officer.

The petitionee says that the real issue in this case is not whether equity has such jurisdiction generally but whether equity may enjoin removal proceedings when the removing tribunal has not acquired jurisdiction over the officer sought to be removed because the latter had not received sufficient notice of the hearing to afford a reasonable opportunity to prepare his defense. As applied to the present case the claim is that the petitionee was denied due process of law because he was not given reasonable time within which to prepare his defense and for that reason the chancellor had jurisdiction to make the injunction order.

■ A *de jure* officer who can only be removed from an office having emoluments attached to it for cause cannot be deprived of his office without due process of law. *Finneran* v. *Burlington,* 89 Vt 1, 5, 93 A 254. Many cases from other jurisdictions cited by the petitionee are to this effect.

■ Notice and an opportunity to be heard are of the very essence of due process of law. *In re Hanrahan's Will,* 109 Vt 108, 119, 194 A 471.

■■ The petitionee claims that when the petitioner acts under the removal statute he is acting in a quasi-judicial capacity. We agree as the statute requires removal for cause and notice. *Rutter* v. *Burke,* 89 Vt 14, 28, 93 A 842; *Davidson* v. *Whitehill,* 87 Vt 499, 506, 89 A 1081. This being so, the petitionee was entitled to notice, and an opportunity to be heard, and a reasonable time to prepare his defense. *Rutter* v. *Burke, supra.*

The petitionee in his bill for an injunction alleged that the notice in the removal proceeding was served on him just before midnight on March 18 ordering him to appear on March 31, that at the time

of service the petitioner knew that this state was a member of the National Alcoholic Beverage Control Association and that the petitionee was its president, that this association had scheduled a week long meeting at New Orleans to commence on March 24 and that the petitionee had planned and firmly committed himself to attend the meeting, and that as president he was required to and would attend, that the petitionee having committed himself to attend this meeting left on March 22 for New Orleans and would be unable to leave the meeting until March 30, that the petitionee would not return to Vermont until sometime after the time fixed for his appearance in the removal proceeding, that in view of the nature and extent and gravity of the charges the notice did not give the petitionee sufficient time within which to prepare his answer and defense thereto as it will be necessary to consult many persons within and without the state and that it will be necessary to subpoena some witnesses and take the depositions of others, that much time must necessarily be spent in studying various legal questions involved.

Judge Hughes had the right to assume that the above allegations were true in determining whether to issue the temporary injunction. In this Court for the purpose of our decision on the petition we must presume that they are true. *State* v. *Hall,* 297 Mo 594, 250 SW 64; *Miller* v. *Superior Ct.,* 59 Cal App 340, 210 P 832; *Anderson* v. *Witthaus,* 340 Mo 1004, 102 SW2d 99; 73 CJS Prohibition, § 39. This Court will, in a proceeding such as this, confine itself to the record before the lower court. *Iowa etc.* v. *Dist. Ct.,* 219 Iowa 1165, 260 NW 73, 99 ALR 967; Anno., 99 ALR 984. We will assume that Judge Hughes took these allegations relating to notice as stating true facts and that he decided that the petitionee had been denied due process because he had not been given a reasonable time within which to prepare his defense.

As the alleged facts are undisputed we can decide, as a matter of law, whether they show that the petitionee was denied due process. The removal proceeding being of a summary character, and designed to accomplish an administrative purpose, a full compliance with the rules governing trials is not required. *Rutter* v. *Burke, supra.* Thus the statutory and rules requirements as to time of appearance and answer do not here apply even by analogy. We agree with the petitionee that what is a "reasonable time" in

any case depends on the facts and circumstances of that particular case. See *Smith* v. *Pelton W. W. Co.*, 151 Cal 394, 90 P 934; *Salmon* v. *Helena Box Co.*, 147 F 408. When the facts are undisputed, as in the present case, reasonable time is a question of law. *Hill* v. *Hobart*, 16 Me 164. It follows that cases in which notices have been held reasonable or unreasonable are of no real value in the present case.

Having stated these general rules relating to notice we turn to the question of whether the court of chancery had jurisdiction to grant the temporary injunction on the ground that the petitionee had been denied due process of law because he was not given a reasonable time within which to prepare his defense in the removal proceeding. The petitionee says that he only received 12 days formal notice and that as the petitioner knew about the former's situation in respect to his proposed trip that he actually was given only 4 days notice within which to prepare his defense. He relies largely on this claim of 4 days notice stressing the fact, as alleged, that the petitioner knew of the proposed trip to New Orleans and the length of time it would take. We need spend no time in determining whether the notice gave the petitionee 13 days within which to prepare his defense, as claimed by the petitioner, or 12 or 4 days as claimed by the petitionee or whether the time thus determined upon was or was not a reasonable time. Although there is an allegation that the petitioner knew of this proposed trip there is none that the petitionee, because of it, or for any other reason, requested additional time to enable him to prepare his defense. Indeed on oral argument counsel for the petitionee conceded that no such request was made. The reason given for failure to so request need not be considered. It is sufficient to state that it had no tendency to show that the request would not have been granted, if made. Lacking such a request the petitioner had the right to assume that no additional time was required by the petitionee within which to prepare his defense even though he was going on the proposed trip.

The proper procedure for the petitionee to have taken would have been to request additional time of the petitioner for the preparation of the defense in the removal proceeding, stating reasons for the request. If the request were denied then at the proper time and place and by adequate exceptions the petitionee could have saved the question for determination by this Court of whether there had

been an abuse of discretion on the part of petitioner in denying the request. There was no necessity for the petitionee to go into equity for a determination of the question of whether he had been denied due process as he had a complete and adequate remedy in a court of law if he had been so denied.

The situation here is like that presented in a case where after an arraignment the court orders a speedy trial and counsel for the respondent requests more time within which to prepare a defense or, in a case, civil or criminal, where for reasons stated a continuance is requested. If the request be denied and it is determined in this Court that the lower court abused its discretion a new trial is ordered. *State* v. *Pierce*, 88 Vt 277, 92 A 218. See also *State* v. *Maguire*, 100 Vt 476, 480, 138 A 741; *Houran* v. *Preferred Acc. Ins. Co. of N.Y.*, 109 Vt 258, 268, 269, 195 A 253.

The case of *Ekern* v. *McGovern*, 154 Wis 157, 142 NW 595, 46 LRANS 796, much relied upon by the petitionee on various points in his briefs should be mentioned and distinguished. That was a case involving the removal by the governor of Wisconsin, by authority of a statute, of the tax commissioner of that state. The proceedings in equity for an injunction were sought after the officer had been removed. The requested injunction was to restrain persons acting under the orders of the governor from placing the newly appointed officer in possession of the officer's quarters by force. The reason for now mentioning this case is to show the difference in its factual situation leading up to the removal proceeding from the one here. In that case the officer received less than an hour's notice of the proceeding. His counsel requested in vain for more time within which to prepare the defense. His protests that not sufficient time had been given were overruled and the governor ordered the commissioner removed from his office. This truly was highhanded and arbitrary action on the part of the governor and it warranted and compelled a holding that the officer had been denied due process of law for lack of sufficient notice.

We hold that for the reasons stated and under the facts and circumstances here appearing the court of chancery did not have jurisdiction to grant the temporary injunction on the ground that the petitionee had been denied due process of law because he was not given a reasonable time within which to prepare his defense in the removal proceeding.

The petitionee also claims that the court of equity had jurisdiction to issue the injunction as he would be denied due process of law for that the petitioner is not an unbiased and disinterested person qualified to sit in judgment on his case. This is the important question to be here determined as it is apparent that if the former claim of lack of due process giving jurisdiction had been determined in favor of the petitionee, and it had been the only such claim, then all that the petitioner need have done would have been to give a notice of another hearing, giving a time for preparation which could not well be claimed to be unreasonably short.

In his bill for an injunction the petitionee alleges statements made by the petitioner and various actions on his part as showing that he is biased and prejudiced against the petitionee to such an extent that the petitioner can not give the petitionee the fair and impartial trial to which he is entitled under the requirement of due process of law. We will again assume that Judge Hughes took these allegations as stating true facts and that he decided that the petitionee would not be accorded due process if the hearing was conducted by the petitioner.

The petitionee relies on the rule laid down in our cases, and universally recognized, that a person is entitled to a full and impartial hearing before a court that is not biased or prejudiced against him. This is a right guaranteed by our constitution. *Leonard* v. *Willcox,* 101 Vt 195, 214, 142 A 762; *Ricci* v. *Bove's Admr.,* 116 Vt 406, 409, 410, 78 A2d 13. This rule applies to an administrative officer exercising quasi-judicial functions. 42 Am Jur, Public Administrative Law, § 21.

An exception to this rule is one called the rule of necessity. Under this rule it is held that an administrative officer exercising such functions may act in a proceeding wherein he is disqualified by bias or prejudice if his jurisdiction is exclusive and there is no legal provision for calling in a substitute. 42 Am Jur, *supra,* § 22; 67 CJS 277. It is said that this rule is supported by the great weight of authority. Ann. 39 ALR 1476. For two late cases in which the rule has been applied see *Moran* v. *School Com.,* 317 Mass 591, 59 NE2d 279, and *Mayor* v. *Superior Ct.,* 324 Mass 144, 85 NE2d 214.

In the case of *Sharkey* v. *Thurston,* 268 NY 123, 196 NE 766, 767, the court of appeals of that state took occasion to discuss and

explain this rule which apparently had been applied previously in some cases in that state. The charter of the city of Lockport provided that the mayor has the power to appoint the members of the board of police commissioners. He was given the power to remove any officer appointed under the charter authority for incompetency, neglect of duty, etc. but such removal "must be founded on specific charges in writing, whereof a copy shall be furnished to such officer, and before such removal he shall have an opportunity to appear in person, or by counsel, and be heard in his defense." The mayor filed charges against three members of the board who had been appointed by him. He served notice on them of a hearing on these charges. On the ground that he was prejudiced against them they procured an order of court prohibiting him from hearing the charges. This order was sustained by the appellate division of the supreme court, but was reversed and the proceeding was dismissed by the court of appeals.

In the course of the opinion written by Judge Lehman it is said: "We assume that it conclusively appears upon the record that the mayor has prejudged the guilt of the plaintiffs before he hears the plaintiffs in their defense. We assume further that the mayor has determined that the chief of police should be removed and that he has stated, privately and publicly, that if the plaintiffs do not remove the chief of police, he will remove them. The question which the parties have sought to bring up for review is whether under these circumstances, the mayor is disabled from hearing and passing upon the charges which he had himself preferred."

The court held that the plaintiffs' right to a hearing was not based on common-law principles and was not guaranteed by the constitution, no matter of punishment being involved, but was derived solely from, and defined by, the statute, by which the mayor's power of removal was limited. It was then said: "Unless there is implicit in that statutory limitation, a condition that the mayor may not conduct the hearing, unless he has an open mind, the plaintiffs have not shown any ground of complaint. Thus the question of whether prejudice by the mayor disables him from hearing the charges he has preferred depends upon the proper construction of the statute."

It is stated that when the legislature grants a right of hearing before administrative action may be taken the courts will ordinarily

give effect to the statute by requiring a hearing before an unprejudiced official, where such hearing can be had without disregard of the terms of the statute and without defeating its purpose. "None the less, when the statute clearly requires the hearing to be held before a designated administrative officer, and no other officer can hold the hearing, then the language of the statute may not be disregarded, nor the legislative intent defeated by holding that the officer is disqualified." It was held that the statute in question should be so construed and it was added, "Even then the hearing is not futile. It requires formulation of the charge and a public record of the defense presented. If the charge is substantial and the defense is not conclusive proof of innocence, the statutory restrictions upon the power of removal are not overstepped."

The statements and language above quoted were approved in the case of *Molloy* v. *Collins,* 66 RI 251, 18 A2d 639, which was also a removal case under a statute giving a mayor the right to remove members of a board for certain specified reasons and in which the question of bias and prejudice was raised.

The statute here under consideration is in all material respects the same as that in the Sharkey case. For the reasons stated in that case, which appear to us to be sound, we hold that as V. S. 47, § 6131 clearly requires the hearing to be held before a designated administrative officer, and as no other officer can hold the hearing, the language of the statute may not be disregarded, nor the legislative intent defeated by holding that the officer is disqualified. This holding is based on the statute itself and is not an application of the "rule of necessity" which because of the wording of the statute need not be applied. It is not necessary to determine whether we would apply it in any case wherein it might be invoked.

The above holding is supported by the case of *McFeeters* v. *Parker,* 113 Vt 139, 30 A2d 300. In that case the question was raised as to whether the public service commission was constituted in violation of certain constitutional provisions including the right of due process of law under the fourteenth amendment of the federal constitution. P. L. 6054 now V. S. 9287, provided that the three members of the public service commission shall be appointed by the Governor with the advice and consent of the Senate and that one member shall be appointed for the term of six years. P. L.

281

448, now V. S. 486, provided that "The governor may remove any civil officer whose appointment devolves upon the governor in the first instance whether appointed by him or any of his predecessors, with or without the advice and consent of the senate, and appoint a suitable person to succeed such official, subject to removal in his discretion."

It is stated at the bottom of page 141 that "We agree with the respondent that the latter section (P. L. 448) empowers the Governor solely in his discretion to remove all or any of the members of the public service commission without hearing." And again at the top of page 143, "As there is nothing in our Constitution which requires the Legislature in creating offices to affix to them terms of definite duration, it follows that it may provide that such offices shall be held during the pleasure of the Governor, and that the incumbent thereof may be removed at pleasure at any time, without notice or hearing."

The holdings in that case show that the Legislature was not required to affix definite terms of office for the members of the liquor control board which by V. S. 6130 are for six years. Thus a right to a hearing on the part of the petitionee is not based on common-law principles and is not guaranteed by any constitutional provision but is merely what might be termed a gratuity on the part of the Legislature.

The petitionee in his reply brief sets forth several methods which he says the petitioner can take to avoid any need for the application of the rule of necessity. In view of our holding above there is no need to discuss these claimed methods. It might be noted that they are set forth as alternative to the invoking of the statute by the petitioner and apparently are not claimed to constitute any legal reason for the non-application of the rule of necessity or for the denial of this petition.

In view of our holdings, the only remaining question which warrants consideration is one ground of the motion of the petitionee to dismiss the complaint for the issuance of a writ of prohibition. This ground is, in substance, that the petitioner had available to him an adequate remedy in chancery. The answer to this claim by the petitioner is, in substance, that as the matter in issue in the removal proceeding relates to or affects public interest or affairs it should be determined as speedily as possible without the delay

incident to the hearings in the court of chancery and the appeal from the decision of that court.

The petitionee relies on the statements appearing in *Petition of Green Mt. Post, supra* at 259, referring to a writ of prohibition, as follows: "Being a prerogative or extraordinary writ, it does not lie, as a rule, for grievances which may be redressed in the ordinary course of judicial proceedings by the remedies provided by law. * * * Failing to resort to another recognized remedy which is available and adequate does not alter the general rule or take the case out of it." A reading of these passages, taken in connection with all that is said on that page of the case in respect to the issuance of the writ, shows that no hard and fast rule is laid down but only as a "general rule" or "ordinarily" the writ will not issue etc.

The petitioner points out claimed reasons why no decision could have been had in this Court before the November term, 1952, or the January term, 1953, if the usual course of procedure had been followed in the court of chancery. The petitionee says that especially because of certain court of chancery rules the case in chancery could have been brought on for early determination in that court and could have been ready for final determination in this Court at its May term, 1952, or at the latest, at its October term, with a decision handed down at the November term.

We cannot say it would have been impossible to have had the case ready for argument at the May term, or an extension thereof, if both parties had co-operated to the fullest extent in the way of getting a speedy hearing by waiving certain statutory rights and if the chancellor had been able to and had given the matter his immediate attention. Following his determination of the matter it would have been necessary to prepare and file a bill of exceptions. Then would have followed the preparation and filing of briefs. Although we cannot say it would have been impossible to have had the case ready for the May term we do say, from our experience with cases coming to us through regular channels, that it is highly improbable that it would have been ready at that time. If it had been argued at the October term we probably would not have been able to hand down an opinion until the January term on account of the two terms of this Court in November and the number of ques-

tions, many of them novel in this jurisdiction, which were presented to us in over 200 pages of briefing.

Through the medium of this petition the case was ready for argument at the May term and an opinion has been handed down approximately 5 months before it reasonably could have been expected if the matter had gone through the court of chancery and had come to us by way of a bill of exceptions.

In 73 CJS at page 89 it is said that "Prohibition may be granted in a proper case where the remedy by appeal or writ of error is not plain, speedy, or adequate, as well as where there is no remedy by way of appeal." In that same volume at page 88 it is stated that it has been held that the existence of a remedy by appeal does not preclude the grant of prohibition where it is deemed to be in the public interest to settle the question involved at the earliest moment. See also *P. S. Com.* v. *Dist. Ct.,* 61 Nev 245, 123 P2d 237; *Schofield* v. *Melton,* 166 Okla 64, 25 P2d 279.

The charges made by the petitioner against the petitionee are very serious and grave in their nature. It cannot be questioned that if the charges, or some of them, are proven to be true the petitionee should be removed from office. It was in the public interest that the question of whether he should be removed should be determined as speedily as possible. For this reason we hold that the petition for a writ of prohibition may properly be granted and that the petitioner was not required to proceed in the court of chancery for a determination of his right under the removal statute.

The petitionee in his supplemental brief argues that the words "question involved" appearing in the statement from CJS last above cited means "judisdictional question" as that was the language used in 50 CJ at page 685 where this statement also appears. We do not agree. It is significant that in the later work the word "judisdictional" was omitted. In our view the "question involved" as used in the statement in CJS *supra,* and in cases cited in support of it, means, as applied to this case, whether the petitionee should be removed from office. The petitionee advances other reasons why we should not here apply the rule of "public interest." All have been considered and none appear to us to be valid objections to its application.

In connection with the claim of the petitionee that the petitioner had available an adequate remedy in chancery, the pe-

titionee relies on a ground in his motion to dismiss which is, in substance, that a writ of prohibition will not go to a subordinate tribunal until the want of jurisdiction has first been raised in that tribunal. This contention accords with the general rule. But where, as in the case at bar, the lack of jurisdiction is apparent on the face of the record, and the questions involved relate to or affect public interests or public affairs, no jurisdictional objection need be made in the lower court. *P. S. Com.* v. *Dist. Ct., supra.* See also *Schofield* v. *Melton, supra,* and Ann. 35 ALR at page 1094 and cases there cited and on following pages.

*It is ordered that a writ of prohibition issue, in the name of the State, signed by the clerk, directed to the petitionees, prohibiting them from proceeding further in the court of chancery of Rutland county on the bill for injunction and the temporary injunction issued therein set forth in the petition for said writ, except to dissolve the said temporary injunction. Let a new order of notice issue for a proceeding under V. S. 47, § 6131, if such be held. Costs in this Court to the petitioner, to be recovered from petitionee Bove.*