WINTHROP ROCKEFELLER, GOVERNOR ET AL v.
ERNEST HOGUE ET AL

5-4594                                          429 S. W. 2d 85

Opinion delivered May 27, 1968
[Rehearing denied July 15, 1968.]

*Wright, Lindsey & Jennings*, for appellants.

*Sam Robinson, Gene Worsham, Nathan Gordon, William S. Arnold* and *William J. Smith*, for appellees.

JOHN A. FOGLEMAN, Justice. This appeal comes from a decree of the trial court enjoining the Governor

and other appellants from proceeding with efforts to remove any of the members of the Arkansas Game & Fish Commission. The decree of the lower court was rendered on the pleadings and a stipulation of the parties. The chancery court based its decision in this suit brought by certain members of the Commission upon the finding that § 5 of Amendment No. 35 of the Arkansas Constitution was not self-executing. It is conceded by the parties that the only question on this appeal is whether this section is self-executing. Section 5 is one of eight sections of the amendment initiated by the people and adopted in 1944, dealing comprehensively with conservation and regulation of wildlife of the state. The amendment creates a Game & Fish Commission of 7 members, each of whom is appointed by the Governor for a seven-year term.[1] The first members were appointed for terms varying from 1 to 7 years, so that the terms would be staggered with the term of one member expiring each year. There are provisions for removal of commissioners, the filling of vacancies, and the election of a Chairman and an Executive Secretary. The powers and duties of the commission are also set out. This court has called the amendment complete in itself, superseding all prior legislative acts, both directive and restrictive, and covering the whole subject. *W. R. Wrape Stave Co.* v. *Arkansas State Game & Fish Commission,* 215 Ark. 229, 219 S. W. 2d 948. The section in controversy reads:

> "A Commissioner may be removed by the Governor only for the same causes as applied to other Constitutional Officers, after a hearing which may be reviewed by the Chancery Court for the First District with right of appeal therefrom to the Supreme Court, such review and appeal to be without presumption in favor of any finding by the Governor or the Trial Court."

Appellants say that the section is self-executing and may be utilized without the necessity of legislation to

---

[1] The Head of the Department of Zoology of the University of Arkansas is an associate, non-voting member.

make it effective. On the other hand, appellees contend that the provision is not self-executing because it constitutes a statement of principles only making legislation laying down rules providing means of carrying the principles into effect necessary to put it in force. Appellees state that they are not, at this time, particularly concerned with the question whether the hearing procedure which has been adopted by the Governor satisfies the constitutional direction of a hearing by the Governor except insofar as that procedure illustrates the lack of guidelines for procedures and the absence of limitations on the Governor's power to establish the rules for such a hearing. Generally speaking, those matters asserted to indicate that the section is not self-executing are:

I.    The failure to prescribe procedures does not assure to an accused commissioner due process of law guaranteed by Article 2 of the Constitution of Arkansas and Amendment 14 to the United States Constitution in that:

A.    The governor might act summarily to remove all commissioners ex parte.

B.    He could remove the entire commission in order to gain control over the commission.

C.    There is a lack of requirement for:

     1.   notice of charges;
     2.   reasonable notice of hearing;
     3.   right to make defense;
     4.   right to appear in person or by counsel;
     5.   preservation of record;
     6.   compulsory attendance of witnesses and production of documents;
     7.   public hearing.

D. No rules of evidence are provided.

E The place and forum of hearing are not fixed.

F. The nature and type of and time limitation on, review by chancery court and appeal to this court are not prescribed.

G. The burden of proof is not placed.

H. No mention is made of the weight to be given a decision of the chancery court.

II. The section might result in vacation of a removed commissioner's position immediately upon the finding of cause for removal by the Governor in spite of the right of review by the Chancery Court of the First District and appeal therefrom to this court.

There is a presumption of law that any and every constitutional provision is self-executing. *Myhand* v. *Erwin*, 231 Ark. 444, 330 S. W. 2d 68. The impact of this presumption should be especially great where the provision in question was initiated by the people.

One of the principal tests as to whether a constitutional provision is self-executing is the determination, from its language, its nature, and its objects, whether it is addressed to the legislative branch or to the judicial branch. *Arkansas Tax Commission* v. *Moore*, 103 Ark. 48, 145 S. W. 199; *Myhand* v. *Erwin*, *supra*. We see nothing that suggests that Amendment 35 is addressed to the legislative branch. Considerable reliance is placed by appellees on *Griffin* v. *Rhoton*, 85 Ark. 89, 107 S. W. 380. This case is readily distinguishable. The constitutional provision there involved reads:

"§ 23. Maximum of officers' salaries or fees.—No officer of this State, nor any county, city or town, shall receive, directly or indirectly, for salary, fees

and perquisites more than five thousand dollars net profits per annum in par funds, and any and all sums in excess of this amount shall be paid into the State, county, city or town treasury as shall hereafter be directed by appropriate legislation.''

In holding this section not to be self-executing, we said:

''There is a strong implication from the concluding phrase of the provision in question—' as shall hereafter be directed by appropriate legislation'—that the framers of the Constitution did not mean it to be self-executing, but intended that the whole provision should be put into force by appropriate legislation. This is greatly strengthened by a consideration of the general and indeterminate character of the language employed. In the first place, the provision for payment of the excess over $5,000 'into the state, county, city or town treasury' is, at least so far as the office of prosecuting attorney is concerned, too indefinite to be properly enforced without legislation. The language, standing alone, would mean that all state officers shall pay the excess into the state treasury, and county officers into the county treasury; yet, when we remember the source whence the fees of a prosecuting attorney come, the language is too general to warrant a conclusion that so unjust a disposition of the excess in his case as payment into the state treasury was intended. As is well said by learned counsel for appellant, probably 90 per cent of fees in felony convictions and 50 per cent of fees for convictions for misdemeanors are paid to the prosecuting attorney by the counties of their respective districts. The state pays only a small part of that officer's compensation—the maximum salary to be paid by the state is fixed at $400 in the Constitution. * * * if we give the provision in question a literal interpretation, and hold it to be self-executing, it would require the excessive fees gathered by some of the prosecuting attorneys from

the counties composing their circuits to be paid into the state treasury to become a part of the common funds of the state. We do not say that the Legislature cannot prescribe such a disposition of the surplus funds, however unjust it may appear to be, in carrying out the constitutional provision; but we do say that the apparent injustice of such a disposition of the funds affords much reason for not ascribing such a meaning to the general form of expression employed. In the next place, the words 'net profits per annum in par funds,' when applied to emoluments of office, are so indefinite that it would be extremely difficult if not impossible to judicially determine, without legislation on the subject, what are 'net profits * * * in par funds.' What basis should the court adopt in ascertaining what are net profits of the office? What expenses are to be deducted? And what tribunal is to pass upon the accounts of the prosecuting attorney, ascertain what his legitimate expenses have been, and fix the amount which he should pay into the treasury? This is a matter easy of solution for a legislative body, but not for tribunals exercising purely judicial functions, unless the Legislature first provides a basis for determining what the profits of the office are. Of course, if we should reach the conclusion that the provision in question is self-executing, then it would devolve upon the courts, in the absence of legislation on the subject, to work out in as nearly an approximately just method as possible what the expenses and net profits of this office are, but the almost insurmountable difficulties in the way of doing it without legislation affords the strongest reason for concluding that the provision was not intended to be self-executing.''

The section under examination in the *Griffin* case was addressed in express words to the General Assembly, not the courts. The problems for the judicial branch here, such as confining procedural steps within the

boundaries of due process, are not as great as the problems which would have been presented in the *Griffin* case. Unquestionably, the problems there were legislative, not judicial. On the other hand, those appearing here are primarily judicial, rather than legislative. The fact that review of the action is to be by the courts is an indication that the provision is addressed to the courts. That 25 years have passed without any implementing or enabling legislation by the General Assembly would indicate that it agrees that the provision was not addressed to it and that legislation was not required to effectuate it. It seems strange that the legislature proposed Amendment No. 42, governing the State Highway Commission, using Amendment 35 language relating to gubernatorial removal of commissioners, but failed for all these years to adopt implementing legislation for either amendment if it thought such language was not self-executing. Legislative interpretation, of course, is not controlling, but is to be considered, if there be any doubt. *Hooker* v. *Parkin,* 235 Ark. 218, 357 S. W. 2d 534; *Arnold* v. *City of Jonesboro,* 227 Ark. 832, 302 S. W. 2d 91. See, also, *United States* v. *Bowling,* 256 U. S. 484, 41 S. Ct. 561, 65 L. Ed. 1054 (1921); *California School Township, Starke County* v. *Kellogg,* 109 Ind. App. 117, 33 N. E. 2d 363 (1941); *Stanford* v. *Butler,* 142 Tex. 692, 181 S. W. 2d 269, 153 A. L. R. 1054 (1944); *Chatlos* v. *McGoldrick,* 302 N. Y. 380, 98 N. E. 2d 567 (1951); 2 Sutherland Statutory Construction, 3rd Ed., § 5110.

The most closely parallel case is *Cumnock* v. *City of Little Rock,* 168 Ark. 777, 271 S. W. 466. There we held the following proviso of Amendment 10 (then called 11) self-executing:

> "Provided, however, to secure funds to pay indebtedness outstanding at the time of the adoption of this amendment, counties, cities and incorporated towns may issue interest bearing certificates of indebtedness or bonds with interest coupons for the payment of which a county or city tax, in addition

to that now authorized, not exceeding three mills, may be levied for the time as provided by law until such indebtedness is paid.''

A dissenting opinion aptly pointed out that the proviso made no provision for the following rather vital matters with reference to issuance of such bonds:

1. the length of time they should run;
2. the rate of interest they should bear;
3. who should execute them;
4. whether they should be sold privately or at public auction;
5. in what denominations they should be issued;
6. whether they should be sold below par.

It seems that legislative action would have been called for to a greater extent there than here.

The remaining test, and the controlling one, is whether the people, in adopting this section, intended that it be self-executing. *Faubus* v. *Kinney,* 239 Ark. 443, 389 S. W. 2d 887. Unless it clearly appears that they did not so intend, we must hold this provision to be self-executing for reasons heretofore set out and for the further reason that no construction of a given power is to be allowed which plainly defeats or impairs the avowed objects. *Ex Parte Levy,* 204 Ark. 657, 163 S. W. 2d 529. It is our duty to construe a constitutional provision in such a way that an express purpose or implied result will be given effect. *Humphrey* v. *Garrett,* 218 Ark. 418, 236 S. W. 2d 569. The remaining arguments of appellees are addressed to this test.

We find no merit in their argument that a Governor might act summarily and that an accused commissioner might not be accorded due process of law. In the first place, we must and should presume that any officer of the state, and especially the chief of the executive branch of the government, will act lawfully, correctly, in good

faith and in sincerity of purpose in the execution of his duties. *Rose* v. *Ford,* 2 Ark. 26; *Buxton* v. *City of Nashville,* 132 Ark. 511, 201 S. W. 512; *Ellison* v. *Oliver,* 147 Ark. 252, 227 S. W. 586; *Phillips* v. *Rothrock,* 194 Ark. 945, 110 S. W. 2d; *Matthews* v. *Bailey,* 198 Ark. 703, 130 S. W. 2d 1006; *Beaumont* v. *Faubus,* 239 Ark. 801, 394 S. W. 2d 478.

Furthermore, summary action is not consistent with removal after a hearing for which there is express provision in the section itself. Where an officer can be removed for specified causes only, he must be afforded a hearing beforehand. *Lucas* v. *Futrall,* 84 Ark. 540, 106 S. W. 667. The requirement of a hearing implies that the accused be given reasonable notice with a statement of charges sufficient to apprise him of the action or actions alleged to constitute the cause or causes of removal. *Lucas v. Futrall, supra; Mechem, Public Officers,* § 454 p. 287; *State ex rel. Beck* v. *Young,* 154 Neb. 588, 48 N. W. 2d 677 (1951); *Norton* v. *Adams,* 24 R. I. 97, 52 Atl. 688 (1902). See, also, Annot, 135 Am. St. Rep. 256. The use of the word "hearing" implies certain essential elements as quoted in *Wisconsin Telephone Co.* v. *Public Service Commission,* 232 Wis. 274, 287 N. W. 122 (1939):

"There are at least three substantial elements of a common-law hearing: (1) The right to seasonably know the charges or claims preferred; (2) the right to meet such charges or claims by competent evidence; and (3) the right to be heard by counsel upon the probative force of the evidence adduced by both sides, and upon the law applicable thereto. If either of these rights is denied a party, he does not have the substantials of a common-law hearing *Ekern* v. *McGovern, supra.* [154 Wis. 157, 142 N. W. 595, 46 LRA (n. s.) 796]".

We agree with the parties that the phrase "for the same causes as apply to other constitutional officers", means for high crimes and misdemeanors and gross mis-

conduct in office. Any hearing on charges of this gravity would certainly require that one accused be heard, both personally and by counsel, and that he be permitted to produce evidence in his defense. *Etzler* v. *Brown,* 58 Fla. 221, 50 So. 416 (1909); *Emerson* v. *Hughes,* 117 Vt. 270, 90 A. 2d 910, 34 ALR 2d 539 (1952); *Farish* v. *Young,* 18 Ariz. 298, 158 Pac. 845, (1916); *State* v. *Frazier,* 47 N. D. 314, 182 N. W. 545 (1921); *People* v. *Nichols,* 79 N. Y. 582 (1880).

In short, any officer, board, tribunal or agency having the power to remove, for cause, an officer serving a fixed term acts in a quasi-judicial capacity in conducting a hearing and the procedure must be of a quasi-judicial character. *Emerson* v. *Hughes,* 117 Vt. 270, 90 A. 2d 910, 34 ALR 2d 539 (1952); *Hawkins* v. *Grand Rapids,* 192 Mich. 276, 158 N. W. 953, Ann. Cas. 1917E 700 (1916); *Speed* v. *Detroit,* 98 Mich. 360, 57 N. W. 406, 22 LRA 842, 39 Am. St. Rep. 555 (1894). As such the procedure must assure a fair trial and due process of law. *McAlpine* v. *Garfield Water Commission,* 135 N. J. L. 497, 52 A. 2d 759, 171 ALR 172 (1947); *Ekern* v. *McGovern,* 154 Wis. 157, 142 N. W. 595, 46 LRA (n. s.) 796 (1913.) It would seem highly desirable that any hearing be public, and certainly it should be if any accused commissioner so desired.

It is not necessary that every detail for application of a constitutional provision be specified in order that it be self-executing. See, *Samples* v. *Grady,* 207 Ark. 724, 182 S W. 2d 875; *Cumnock* v. *Little Rock,* 168 Ark. 777, 271 S. W. 466; *Dullam* v. *Willson,* 53 Mich. 392, 19 N. W. 112, 51 Am. Rep. 128 (1884); *State* v. *Young,* 154 Neb. 588, 48 N. W. 2d 677 (1951). As to many of the matters pointed out by appellees as deficiencies in the removal section of this amendment, it is sufficient to say that review by the courts necessarily requires that the courts see that any accused person is accorded the basic fundamentals of fair play and substantial justice. These

elements seem to constitute the current test of due process.[2]

The trial court, in reaching the conclusion that section 5 was not self-executing, stated that the legislature realized that article 15, dealing with impeachment, was not self-executing by enacting Ark. Stat. Ann. § 12-1201 et seq. While this legislation was adopted before the 1874 Constitution, it doubtless remained in effect. However, we find little merit in this argument because impeachment is a matter for action by the legislative branch. Certainly, it would be expected that the branch of government having responsibility for the proceeding should adopt procedural rules subject to constitutional or statutory limitations. The grant of power to remove an officer for specified causes without provision for effectuation, carries with it, as incidents to the grant, all means necessary to effectuate the power. *State* v. *Walbridge*, 119 Mo. 383, 24 S. W. 457, 41 Am. St. Rep. 663 (1893); *Ridgway* v. *City of Fort Worth*, 243 S. W. 740 (Tex. Civ. App. 1922); *Dullam* v. *Willson*, 53 Mich. 392, 19 N. W. 112, 51 Am. Rep. 128 (1884).

One other argument of appellees that deserves consideration is the contention that there is uncertainty as to the time when a commissioner's removal becomes effective so that a vacancy might exist throughout the process of review and appeal. We feel that the provision that review and appeal be without presumption in favor of any finding by the Governor or the trial court is inconsistent with the idea that the Governor's removal would be effective during this process. It is only when the removal order becomes final that it is effective, and any order of removal by the Governor should be held in abeyance upon prompt institution of proceedings for review. Support for this construction is found in the fact that there is no provision for an interim appointment pending review and appeal.

---

[2]This is the test applied by this court in *Pennsalt Chemical Corporation* v. *Crown Cork & Seal Company, Inc.*, 244 Ark. 638, 426 S. W. 2d 417 (1968).

The time for application for review is certainly limited by standards of reasonableness. The situation is somewhat analogous to situations where review of the actions of a tribunal on petition for certiorari or prohibition is denied because not sought promptly when the necessity therefor appears. See, *Johnson* v. *West,* 89 Ark. 604, 117 S. W. 770; *Galloway* v. *LeCroy,* 169 Ark. 838, 277 S. W. 35.

We do not intend to imply that legislation in this field is barred. The General Assembly is the repository of all the powers of sovereignty not reserved by the people or reposed in one of the branches. *Hackler* v. *Baker,* 233 Ark. 690, 346 S. W. 2d 677. There can be no doubt that the legislative branch may implement any constitutional provision by legislation which is not inconsistent therewith or repugnant thereto, so long as the legislation does not invade specific powers delegated to one of the other branches or exceed specific constitutional limitations. *Myhand* v. *Erwin,* 231 Ark. 444, 330 S. W. 2d 68.

When we consider all governing factors, we conclude that Section 5 of Amendment 35 is self-executing. The courts of other states having similar constitutional provisions conferring upon the Governor the power to remove officers have reached the same result. See, *e. g., Dullam* v. *Willson,* 53 Mich. 392, 19 N. W. 112, 51 Am. Rep. 128 (1884); *State* v. *Young,* 154 Neb. 588, 48 N. W. 2d 677 (1951). Since it has been conceded by all parties that the only question now before the court is whether this section is self-executing, the propriety of the procedure adopted by the Governor is not now before us. We have dealt only with those questions we deem necessary to consider in order to reach our conclusion that Section 5 of Amendment No. 35 is clearly self-executing.

The decree is reversed, and the injunction is dissolved.