## ATKINSON *v.* PINE BLUFF.

4-3773

Opinion delivered December 17, 1934.

*Bridges, McGaughy & Bridges,* for appellant.

*Evan W. Crawford* and *Coleman & Gantt,* for appellee.

BUTLER, J. H. L. Atkinson, a citizen, property owner and taxpayer of the city of Pine Bluff, brought this action against the city of Pine Bluff and C. J. Reeves to restrain them from consummating a contract by which it was agreed that the city would sell, and Reeves would purchase, certain of the bonds of the city, and also to restrain the city from making assessments on property within its corporate limits to pay therefor. The city and Reeves filed their answer to the complaint to which the plaintiff demurred. It was stipulated that, if the demurrer to the answer should be overruled, the cause should be submitted on final hearing upon the complaint, answer and exhibits thereto. The court overruled the demurrer, and on final hearing denied the prayer of plaintiff's complaint, dismissing the same for want of equity.

From the pleadings and exhibits, these facts appear: For a number of years the sewers of Pine Bluff have been inadequate to properly drain the waters from its streets and dispose of the fluids passing from its buildings. Two main sewers were built many years ago, into which lateral sanitary sewers discharged their contents which were emptied by the main sewers into the channel of the Arkansas River. In recent years this channel has moved, now being much further away from the city than when the main sewers were first constructed, and a bar has formed at the outlets so that the sewage cannot be carried away but is deposited along the shores of the stream. This, in seasons of high water, is carried back through "Harding's Drain" which at times overflows its banks resulting in the deposit of feculent matter in the streets of the city. "Harding's Drain" is a water course, partly natural and partly artificial, passing through the city and emptying into the Arkansas River.

Engineers for the city and the Civil Works Administration, a Federal agency, made surveys, reported the conditions then existing and recommended certain necessary changes in the city's sewer system. The Federal agency and the city, co-operating, reached an agreement for the construction of the necessary improvements at an estimated cost of $300,000, $160,000 of this

sum to be borne by the city. To provide this sum, the city, by proper ordinance, called an election to determine whether the city should issue bonds in said sum "for the purpose of constructing, extending, repairing, improving and enlarging the sewers and drainage systems within the corporate limits thereof." At the election, a majority of the qualified electors voting on the question authorized the bond issue. Thereafter it was ascertained that the city's part of the cost would be only $80,000 and an ordinance was duly passed providing for the issuance and sale of bonds in that amount.

The plan for the improvement of the sewer system provides for the creation of new outlets and for building a wall at the outlet of "Harding's Drain" to protect the city from the flood-waters of the river. In this wall a flood-gate is constructed to remain open during low water, thus permitting the drainage to pass into the river, and in seasons of flood the gate is to be closed, thus preventing the waters from the river from backing up the drain and overflowing the city. A pumping plant is to be erected so that in times of flood a part of the sewage may be brought over the wall and discharged into the river's channel. "Harding's Drain" is to be extended by means of a canal approximately a distance of three miles to connect with Bayou Bartholomew.

It is the contention of the appellant that, since the proceeding was being undertaken under the authority of Amendment No. 13 to the Constitution, which permits the issuance of bonds by a city "for the construction of sewers and comfort stations," the installation of a pumping plant, the building of a wall at the outlet of "Harding's Drain," and the digging of a canal so as to extend the drain into Bayou Bartholomew would be improvements not authorized by said amendment. Appellant contends also that the sewers named in the amendment must be limited to sanitary sewers and not such as are generally denominated "storm sewers."

It is argued that at the time of the adoption of the amendment, *supra,* the word "sewer" had a well-defined legal meaning which is limited to such conduits as are built underground and intended for the passage of fluids

and feculent matter from the buildings within the city. This being the meaning of the word, the appellant insists that a wall across the outlet of the drain, a pumping station installed thereat, and a canal leading from it beyond the city limits, are not sewers and their construction therefore unauthorized. To sustain this contention, we are cited to 9 R. C. L. 617, and a number of decisions of other courts.

It is our opinion that the definition is too narrow, for it is not any particular method of construction, but the use for which a conduit is made which determines whether it is a sewer or merely a drain. This court in *Barton* v. *Drainage Dist. No. 30,* 174 Ark. 173, 294 S. W. 418, has pointed out that no particular significance attaches to a particular word used. It is unnecessary for us to decide, however, whether or not the construction of sewers under the amendment must be restricted to sanitary sewers. In granting authority to construct sewers, power is impliedly granted to adopt the means appropriate and reasonably adapted to carry into effect the authority expressly given. *McCulloch* v. *Maryland,* 4 Wheat. 316; *Fletcher* v. *Oliver,* 25 Ark. 289.

In the reports made by the engineers exhibited with the pleadings, which it was stipulated should be considered by the court as their depositions, it appears that one of the requirements of the War Department in its demands for provision for intercepted sewage was the construction of the wall which made necessary the installation of a pumping station, without which the sanitary sewer system could not be operated during the high stages of the river. This station therefore was a necessary appurtenance to the system. It also appears that the wall was necessary because of the sewage from the main sewers flowing back into "Harding's Drain." Many of the storm sewers emptied into "Harding's Drain." These, in times of large rainfall, pile up waters in the drain to an extent which causes them to invade the sanitary sewer system and the pumping plant, putting the latter out of commission and rendering the sanitary system useless by backing up the water in its drains, over-

flowing the manholes, and depositing sewage on the city streets.

From these facts it is apparent that the wall at the outlet of the drain, the erection of the pumping plant, and the extension of the drain were necessarily incident to the proper functioning of the sanitary sewer and, as such, are a part of that system. They are not separate and independent improvements, although one of the effects might be to afford better facilities for surface drainage and to protect the city from inundation by flood waters. *Drexel* v. *Town of Lake,* 127 Ill. 51, 20 N. E. 38; *Pioneer, etc., Co.* v. *City of Portland,* 119 Or. 1, 247 Pac. 319.

Therefore, these being necessary to the operation of the sewage system, they must be deemed to be as much a part of such system as the underground channels into which the fluids are first discharged.

It follows that the decree of the trial court is correct, and should be, and is, affirmed.