TUNNAH v. MOYER, MAYOR.

4-6484                                    152 S. W. 2d 1007

Opinion delivered July 7, 1941.

*House, Moses & Holmes, Richard C. Butler* and *S. Lasker Ehrman,* for appellant.

*Cooper Jacoway* and *James I. Teague,* for appellee.

GRIFFIN SMITH, C. J.  The question is whether funds realized from a sale of bonds by the City of Little Rock under authority of Amendment No. 13 to the constitution may be used in purchasing right-of-way in order that East Twenty-fifth Street Extension may be accommodated by construction over Chicago, Rock Island & Pacific Railroad lines west of Adams Field, the latter being familiarly known as the municipal airport.

At an election August 23, 1940, authorized by city ordinance No. 5947, there was approval of a bond issue of $300,000, proceeds to be used for purchase of additional lands for airport purposes and in "constructing and keeping buildings for administration, passenger terminal, hangars, taxi strips, driveways," and in providing "other things incidental and necessary to a modern airport."

Area of the airport has been more than doubled, and additional enlargements are contemplated.

Missouri Pacific Railroad Company lines are on a right-of-way extending northwest and southeast, and at certain points the property adjoins western extremities of the airport. Rock Island is west of Missouri Pacific, and from a point south of Twenty-fifth Street Extension the Rock Island road curves sharply from southwest until the direction is virtually due north-south where the railroad is crossed by the street extension. The city's plan is to construct an overpass which will continue Twenty-fifth Street Extension west by north to highway No. 65. The overpass is an enterprise of the federal government, estimated to cost $150,000, construction depending upon

procurement of the right to use private property for which expenditures aggregating $10,662.50 must be made before the government will proceed. Payment of this sum from the bond fund was authorized by city ordinance No. 6211 of May 19, 1941. Appellant, a Little Rock citizen and taxpayer, seeks by injunction to prevent issuance of warrants, alleging use it is proposed to make of the funds constituted a diversion. An additional $5,000 from the city's general fund was appropriated to supplement the item of $10,662.50, as to which no question is raised.

The city's answer reviews enlargement and development of the airport at expense of the federal government, . . . "best described [as a plan] to grade and drain an airport extension on 700 acres of city property, paving two runways with concrete and one with asphalt, and all incidental work of sodding, fencing and lighting in conformance with standards of the Civil Aeronautics Administration, . . . at a cost of approximately $1,000,000."

The answer further recites that the expenditures referred to were predicated upon plans for an airport free of physical obstructions; that a county highway known as Fourche Dam Pike traverses the field, and that it creates an obstruction impeding development of runways and other facilities essential to aviation.

The so-called "pike" forms the southern boundary of the original municipal airport, leading from its intersection with East Seventeenth street. The obstructing part of the highway extends east from a western boundary of the field where Frazier Pike is crossed. It extends east, then northeast, and east again.

Fourche Bayou is bridged at a point approximately a mile and a half east of the southeast corner of Adams Field. Beginning at the southeast corner of Adams Field, Factoria avenue marks the eastern boundary for half a mile, intersecting with Fourche Dam Pike at the field's terminus. The pike extends east (with direction variations) to the bayou bridge. Twenty-fifth Street Extension, from the proposed overpass, leads due east more than three miles to Fourche Bayou bridge, and immediately north of the street extension (from Missouri Pa-

cific railroad to Factoria avenue, a distance slightly less than one mile) the airport is contiguous.

East Sixth, Ninth, Eleventh, Thirteenth, and Seventeenth streets, somewhat circuitously, lead to Adams Field. East Sixth leads into Picron avenue, and the latter intersects East Tenth street at the northeast corner of the airport and extends southeast to Fourche Dam Pike. East of Picron avenue the city owns property which is to be used for further expansion of Adams Field.

It appears, therefore, that the county road lying within confines of the airport serves residents of the area lying east of the airport, but upon completion of the government's expansion program travel by the old route will be attended by danger to those who use it, and such use will necessarily constitute a hazard to aviation.

It is the county's belief that if the right of user is to be surrendered, reasonable facilities should be substituted, and to this end (July 12, 1940) there was a judgment vacating the road on condition that East Tenth and East Eleventh streets be widened and repaired, and that Twenty-fifth Street Extension be improved, as set out in the order.

The complaint of James T. Tunnah named as defendants Charles E. Moyer, mayor; H. C. Graham, city clerk, and G. L. Alexander, city treasurer. The City of Little Rock, asserting a vital interest in the subject-matter of the cause of action, interpleaded, adopting the answer of the original defendants. Tunnah's demurrer to the answer was overruled. There was a decree denying injunctive relief.

#### Other Facts—and Opinion

Appellant predicates his allegation of error upon the assertion that lands sought to be condemned are not contiguous to the airport, and that there are other means of ingress and egress. It is not contended that if the city owned an airport, "and had no possible means of access," it could not purchase land to facilitate use of the property. It is argued that East Sixth street is an important thoroughfare; that it accommodates traffic and crosses two railroads through underpasses; that East Ninth

street is also paved, and in addition East Fifteenth and East Seventeenth streets are available. There is this statement in appellant's brief:

"The building of the overpass and construction of a road from Frazier pike to Highway 65 are in no sense a part of the airport development, but are merely a link in the creation of a new highway out of Little Rock. The fact that it can be used by persons going to and from the airport is incidental to the building of the road. The construction of this highway is neither necessary nor incidental to maintenance of the airport."

Amendment No. 13. to our constitution expressly authorizes bonds to be issued ". . . for the purchase, development, and improvement of . . . flying fields located either within or without the corporate limits of [a] municipality." But it is further provided that "No municipality shall ever grant financial aid toward the construction of railroads or other private enterprises, . . . and no money raised under the provisions of this amendment by taxation or by sale of bonds for a specific purpose shall ever be used for any other or different purpose."

By approving the bond issue in 1940, citizens of Little Rock authorized funds to be used for the purposes expressed ". . . and [for] other things incidental and necessary to a modern airport." The word "incidental" must be read in connection with "necessary." Amendment No. 13 fixes limitations, and "incidental" is not used. But the express grant of authority carries with it powers implied by reason of the purpose to be served.

In *Bulloch* v. *Dermott-Collins Road Improvement District,* 155 Ark. 176, 244 S. W. 327, the question was whether assessments of benefits were void. Plans provided for wooden bridges to cost from $10,000 to $12,000, spanning non-navigable waters. The legislative act authorized the commissioners to construct "necessary bridges." In the opinion it was said: "This means, of course, bridges incident to the main improvement, and not bridges of such magnitude that themselves would constitute independent improvements. We do not think the

character of bridges . . . or their estimated cost, stamp them as independent improvements. They are incidental and necessary to the construction of the road. In other words, they are component parts of one improvement.''

In *Railey* v. *City of Magnolia,* 197 Ark. 1047, 126 S. W. 2d 273, it was held that an election to determine whether the city should erect a hospital was not ''ineffective'' because the ordinance made no reference to equipment, the holding being that authority to erect the hospital impliedly authorized it to be equipped. ''A naked building,'' says the opinion, ''would not be a hospital. It would require the essential equipment to make it such.''

The holding in *Rhodes* v. *City of Stuttgart,* 192 Ark. 822, 95 S. W. 2d 101, was that an ordinance providing for an election on a bond issue to construct, widen, straighten, and pave streets, was not void because it failed to designate the amount to be used on each kind of work in making the general improvement.

Mr. Justice BUTLER, in *Atkinson* v. *Pine Bluff,* 190 Ark. 65, 76 S. W. 2d 982, expressed the view of the court that under Amendment No. 13, authorizing cities to issue bonds ''for the construction of sewers,'' the power was impliedly granted to adopt the means reasonably appropriate to carry into effect the authority expressly given.

No precise definition can be formulated as a hard and fast rule for determining just where ''incidental'' infringes upon ''necessary,'' or where ''necessary'' excludes ''incidental.''

In the case at bar city authorities, believing they have exercised a sound discretion, will apply bond money to the purchase of highway right-of-ways located almost a mile west of the airfield; but in exchange the county highway on the field will be eliminated and access to the field over an improved highway will be assured. It is not alleged that unreasonable amounts are to be paid for overpass lands. Value to the county of its public road may be equal to the fund expended by the city; and cer-

tainly value to the airport (and incidentally to the city) is substantial when the road is closed.

Express authority in Amendment No. 13 for cities to acquire "flying fields" beyond the corporate limits carries with it implied authority to employ reasonable means in making the field available to the public, and this means roads. It is true there are streets by which the airport can be reached, but in view of the development of aviation, enlargement of local facilities, and of the fact that the airport forms a link in transcontinental flying, we do not agree with appellant that authority to consummate the questioned transaction is lacking; nor do we think the county court order was invalid because of the conditional nature of its recitals.

The decree is affirmed.