MYHAND *v.* ERWIN, COUNTY JUDGE.

5-2052                                                330 S. W. 2d 68

Opinion delivered December 21, 1959.

*S. Hubert Mayes, Jr.,* for appellant.

*Mehaffy, Smith & Williams, Hershel H. Friday, Jr.* and *James E. Westbrook, E. W. Brockman, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal involves a construction of Amendment No. 49,[1] adopted by

---

[1] The amendment, in full, is as follows:

"SECTION 1. Any city of the first or second class, any incorporated town, and any county, may issue, by and with the consent of the majority of the qualified electors of said municipality or county voting on the question at an election held for the purpose, bonds in sums approved by such majority at such election for the purpose of securing and developing industry within or near the said municipality holding the election, or within the county holding the election.

SECTION 2. Such bonds shall bear interest at a rate not to exceed six per centum (6%) per annum and shall be sold only at public sale after twenty (20) days advertisement in a newspaper having a *bona fide* circulation in the municipality or county issuing such bonds; provided, however, that the said municipality or county may exchange such bonds for bonds of like amount, rate of interest, and length of issue.

SECTION 3. To provide for the payment of such bonds, principal and interest, as they mature, the municipality or county may levy a spe-

the people at the general election of November 4, 1958. The amendment provides for the issuance of bonds by cities, incorporated towns, and counties, for the purpose of securing and developing industry "within or near the said municipality holding the election, or within the county holding the election." Pursuant to the provisions of said amendment, appellee, as judge of the Desha county court, and while the court was duly and legally in ses-

---

cial tax, payable annually, not to exceed (5) mills on the dollar, in addition to the legal rate permitted on the real and personal taxable property therein; provided, however, the municipality or county may, from time to time, suspend the collection of such annual levy when not required for the payment of its bonds; and provided further, however, that in no event shall the real and personal taxable property in any city or town be subject to a special tax in excess of five (5) mills for bonds issued hereunder.

SECTION 4. Such bonds shall be serial, maturing annually after three years from date of issue, and shall be paid as they mature, and no such bonds shall be issued for a period longer than thirty (30) years.

SECTION 5. The governing body of the municipality or the County Court of the county shall exercise jurisdiction over the sale or exchange of any such bonds voted by the electors at an election held for that purpose and shall expend economically the funds so provided.

SECTION 6. The election on the issuance of such bonds shall be held at such time as the governing body of the municipality may designate by ordinance, or as the County Judge of the county may designate by order, which ordinance or order shall state the sum total of the issue, the dates of maturities thereof and shall fix the date of election so that it shall not occur earlier than thirty (30) days after the passage of the said ordinance or the granting of said order. The said election shall be held and conducted, the vote thereof canvassed, and the result thereof declared under the law and in the manner now or hereafter provided for municipal elections when the election is held by a municipality, and in the manner now or hereafter provided for county elections when the election is held by a county, so far as the same may be applicable, except as herein otherwise provided. Notice of the election shall be given by the Mayor of the municipality or by the County Judge of the county by advertisement weekly for at least four times in some newspaper having a *bona fide* circulation in the said municipality or county, with the last publication to be not less than ten (10) days prior to the date of said election. Only qualified electors of the said municipality or county shall have a right to vote at the said election; provided, however, that when an election is held by the county, if any city or town within such county has previously voted a levy of five mills under the provisions of this amendment which levy shall not have expired at the time of the election held by the county, then the electors of such city or town shall not be eligible to vote in the county election. The result of the said election shall be proclaimed by the Mayor of the municipality or by the County Judge of the county, and the result as proclaimed shall be conclusive, unless attacked in the courts within thirty (30) days after the date of such proclamation.

SECTION 7. All provisions of the Constitution, or amendments thereto, in conflict herewith, are, to the extent of such conflict, hereby repealed."

sion, ordered a special election to vote on the question of issuing bonds in the amount of $225,000, following which, the voters of the county overwhelmingly approved the bond issue. The purpose of the bond issue is to provide funds for the construction of a hard surfaced, all-weather, road, necessary for the servicing of a proposed industrial site for Potlatch Forests, Inc., in Desha County. The president of the company advised that Potlatch would locate the industrial plant in Desha County only if the proposed road was constructed. Appellant, J. K. Myhand, proceeding as a property owner and taxpayer, filed a complaint against appellee in the chancery court, alleging that a tax will be levied, bonds will be issued and construction undertaken, and that the tax will be paid by appellant and other property owners and tax payers of the county. Myhand sought to enjoin appellee from taking further steps with reference to the construction of the road, and asked a declaratory judgment holding the proposed action of appellee to be contrary to the Constitution of the State of Arkansas. On September 14, 1959, appellee filed his demurrer,[2] and on October 6, 1959, after appellant declined to plead further, the chancery court entered its decree dismissing the complaint. From such decree comes this appeal. For reversal, appellant relies on the following points:

## I.

"The proposed issuance of bonds by appellee is not authorized by Amendment No. 49 to the Constitution of Arkansas, but is merely an attempt to pave a county road for the use of all members of the traveling public.

## II.

"The proposed bond issue is not on a 'credit-lending' basis and thus is not authorized by Amendment No. 49.

---

[2] Also, on September 30, 1959, J. F. Wallace, a citizen and property owner of Desha County, filed an intervention on behalf of appellee, following which appellent amended his complaint, incorporating the allegations set out in the intervention, and prayed for the same relief as originally requested.

### III.

"The only enabling legislation under Amendment 49 is Act 121 of 1959, and since the proposed bonds are not being issued under said Act, they are unauthorized and illegal.

### IV.

"Since the proposed bonds are not authorized by Amendment No. 49, their issuance would be contrary to and in violation of Amendment No. 10 and Amendment No. 13 to the Arkansas Constitution."

We proceed to a discussion of each point in the order listed.

### I.

Appellant points out that Amendment No. 49 was not designed to supplement our present comprehensive plan of providing county road funds, and that the intent of the people in adopting the amendment was to provide a means of financing direct aid to industries, such as the purchase of industrial sites, and the construction of appropriate industrial facilities on such locations. It is also pointed out that benefits from the proposed road will not be confined to Potlatch Forests, Inc., but will likewise benefit members of the traveling public; that to permit this road to be financed under provisions of the amendment would have the effect of permitting financing for any county road so long as the road is used by any industry located in the county. Appellant suggests that the amendment might well become a catch-all for any kind of county or municipal improvement.

We do not agree with appellant's contention. It is true that some members of the public may use the road, but the fact that benefits cannot be isolated, is no reason to preclude such benefits for those who properly come within the scope of the amendment, as envisioned by the people in adopting same. This Court has been liberal in its construction of constitutional amendments, so as to carry out the obvious purpose of the people in adopting the amendments. For instance, in interpret-

ing that portion of Amendment No. 13, which provides for the issuance of bonds by a municipality "for the purchase, development and improvement of public parks and flying fields located either within or without the corporate limits of such municipality * * *", this Court held that the "development and improvement" included implied authority to employ reasonable means to make the field available to the public. See *Tunnah* v. *Moyer, Mayor,* 202 Ark. 821, 152 S. W. 2d 1007. In its Opinion the Court said:

"Express authority in Amendment No. 13 for cities to acquire 'flying fields' beyond the corporate limits carries with it implied authority to employ reasonable means in making the field available to the public, and this means roads. It is true there are streets by which the airport can be reached, but in view of the development of aviation, enlargement of local facilities, and of the fact that the airport forms a link in transcontinental flying, we do not agree with appellant that authority to consummate the questioned transaction is lacking; * * *."

In *Todd* v. *McCloy,* 196 Ark. 832, 120 S. W. 2d 160, which also involved a construction of Amendment No. 13 relating to the authorization to cities "for the development and improvement of public parks", this Court held that this language was broad enough to include construction of a stadium, where park visitors might seat themselves to witness athletic entertainment; *i.e.,* the stadium was held to be "an improvement" within the meaning of the amendment. Actually, even that liberal a construction (if it be so considered) is unnecessary to give validity to the proposal now before us. Potlatch Forests, Inc., selected a suitable site in Desha County on which to construct and operate a paper mill. The facility, incidentally, will cost the corporation approximately $35,000,000. The site of this proposed plant is located in an isolated area of the county, and at the outset, it is noted that construction of the plant will require transportation of hundreds of laborers as well as materials to the plant site. Of course, following com-

450

pletion, the very nature of the industry obviously requires an all-weather road the year round, as necessarily, wood and wood products will be systematically and continuously hauled to and from the plant. The proposed road is an integral and necessary component of the industry, and it would be difficult, if not impossible, to operate without it. Accordingly, we find that the primary and principal purpose of constructing the road is to secure the Potlatch industry for Desha County. We further hold that this road has a direct relation to the normal and daily activities of Potlatch. It follows that its construction is permitted and authorized by the provisions of Section 1, Amendment No. 49.

## II.

Appellant contends that sections two and three are indicative of an intent by the people that bonds be issued only in those situations where funds are available from lease rentals or other sources in amounts sufficient to service the bonds. Of course, communities which are seeking industry, frequently construct a building and then enter into a lease agreement with the industry providing for rental in an amount contemplated as sufficient to retire the bonds (which were issued to finance the construction of the facility). This is not true in the instant case, as Potlatch is constructing, at its own cost, the entire plant. We do not agree with appellant's contention. Section 3 provides that the county "may, from time to time, suspend the collection of such annual levy when not required for the payment of its bonds." The mere fact that provision is made for the collection of taxes obviously indicates an intention that bonds be issued under the amendment where no funds from other sources are available, or are insufficient to service the bonds; the quoted provision, allowing suspension of the tax, was intended to give the amendment flexibility, and to take care of situations where sufficient funds might become available from lease rentals or other sources which could be applied on the payment of principal and interest. More pertinent in construing the intent of the

people in adopting the amendment, is (in providing for suspension of the tax) the use of the word ''may'' rather than ''shall.'' This clearly indicates there was no intention of confining Amendment No. 49 to credit-lending situations, and, of course, the amendment itself contains no such limitation. As a matter of fact, even in situations where it is contemplated that lease rentals may be available to service the bonds, many expenses frequently arise that cannot be recouped from this rent. Certain expenses are necessary in contacting industries, and the industry might well insist on having its moving expenses paid before agreeing to relocate. We are persuaded that in adopting Amendment No. 49, the citizens of Arkansas had no intent of limiting the scope of the amendment to ''credit-lending'' situations, but to the contrary, approved the amendment in accordance with the natural and literal meaning of the language employed.

## III.

The legislature of 1959 enacted Act 121, title of which is ''AN ACT to Facilitate the Issuance of Municipal and County Bonds Under the Provisions of Amendment No. 49 to the Constitution of This State When Such Bonds Are to be Exchanged for the First Lien Serial Coupon Bonds of Local Industrial Development Corporations; and for Other Purposes.'' Admittedly, the proposed bonds here under discussion do not come within the provisions of Act 121, and unless Amendment No. 49 is self-executing, bonds cannot be issued except under the terms of that legislation. Let it first be stated that we do not consider the legislature intended that Act 121 should set out the exclusive method of issuing bonds, and this is plainly denoted by the use of the word ''when'' appearing in the title of the act. Nor do we consider that the passage of this act evidenced a belief on the part of the legislature that Amendment No. 49 was not self-executing, for legislation may be enacted in implementation of constitutional provisions so long as such legislation is not inconsistent or repugnant to the constitutional amendment. At any

rate, we think the amendment is clearly self-executing. It is true that the amendment itself does not so provide, but this is immaterial. As stated in *Corpus Juris Secundum,* Vol. 16, § 48, page 146:

"Whether or not a provision is self-executing depends on whether the language is addressed to the courts or to the legislature, — whether it indicates that it is intended as a present enactment, complete in itself as definitive legislation, or contemplates subsequent legislation to carry it into effect; and this requires a consideration both of the language used and of the intrinsic nature of the provision itself. The question is always one of intention and, in order to determine the intent, the general rule is that courts will consider the language used, the objects to be accomplished by the provision, and the surrounding circumstances."

According to American Jurisprudence, Vol. 11, page 689, there is now a presumption that all provisions of the constitution are self-executing. In our own case of *Cumnock* v. *Little Rock,* 168 Ark. 777, 271 S. W. 466, we held Amendment 10[3] to be self-executing, though the amendment itself did not so provide. Chief Justice McCulloch, in rendering the Opinion for the Court, stated:

"In the case of *Griffin* v. *Rhoton,* 85 Ark. 89, we quoted from Judge Cooley the following test: 'A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right

---

[3] The Opinion refers to this amendment as Amendment 11. Several amendments have been re-numbered, and this re-numbering is discussed by John Strahorn, Jr., Associate Professor, School of Law, in an article appearing in the University of Arkansas Law School bulletin of May, 1930. From the article: "One of the reasons for this confusion is found in the Supreme Court's recent reversal of its rule on the question of the majority necessary to adopt amendments under the first *Initiative and Referendum* plan of 1910. *Brickhouse* v. *Hill,* 1925, 167 Ark. 513, 268 S. W. 865; *Combs* v. *Gray,* 1926, 170 Ark. 956, 281 S. W. 918. These cases validated several amendments which had been voted on and declared rejected under the then existing rule. New numbers had to be assigned to them several years after their adoption. Still others had been declared adopted and numbered, only to be invalidated by the courts. Others have been adopted numbered, and then repealed. Thus the confusion is explicable if not understandable. Perhaps the greatest reason for the confusion lies in the fact that every publisher who has had occasion to list the amendments in recent years has assigned his own set of numbers to the amendments, with striking results."

given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.' "

The Opinion further quoted and adopted the language of a Minnesota case[4] as follows:

" 'If the nature and extent of the right conferred and of the liability imposed are fixed by the provision itself, so that they can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject is referred to the Legislature for action, then the provision should be construed as self-executing.' "

Applying the tests to the case before us, it is first noted that there is no language used in Amendment No. 49 indicating that the subject is referred to the legislature for action. In the next place, the substance and extent of the rights conferred by the amendment are clearly set forth in the amendment itself. Section 2 sets out the maximum interest rate, and provides that the bonds shall be sold only at public sale after advertising for twenty days in a newspaper having a *bona fide* circulation in the county issuing such bonds. Section 3 provides for the levy of the tax, not to exceed five mills on the dollar, and *inter alia,* provides for the suspension of the annual levy. Section 4 provides that the bonds shall be serial, "maturing annually after three years from date of issue, and shall be paid as they mature, and no such bonds shall be issued for a period longer than thirty (30) years." Section 5 sets forth the body that is to exercise jurisdiction over the sale or exchange of bonds. Section 6 provides in detail the manner in which the election shall be held. We hold that Amendment No. 49 is self-executing, and accordingly, the proposed bond issue is not precluded by the passage of Act 121 of 1959.

---

[4] *Willis* v. *Mabon,* 48 Minn. 140.

## IV.

Appellee admits that Amendments 10 and 13 are violated if the proposed bonds are not authorized by Amendment No. 49. On the other hand, appellant concedes that neither amendment has been violated if the bonds are authorized by Amendment No. 49. Since we have concluded, as herein pointed out, that the bond issue is authorized by the latter amendment, it becomes unnecessary to discuss this contention. We therefore conclude that the Desha Chancery Court properly dismissed appellant's complaint, and the decree of dismissal is herewith affirmed.