HACKLER *v.* BAKER, COUNTY JUDGE.

2423 & 2461                                              346 S. W. 2d 677

Opinion delivered May 29, 1961.

[Rehearing denied June 23, 1961.]

*Thomas B. Tinnon,* for appellant.

*J. M. Smallwood* and *Richard Mobley,* for cross appellants.

*Rose, Meek, House, Barron, Nash & Williamson,* for appellee.

PAUL WARD, Associate Justice. This litigation stems from an attempt by Baxter and Marion Counties (adjoining) to enter into a compact, under the provisions of Act No. 2 of the First Extraordinary Session of the 1960 General Assembly, for the purpose of promoting industrial development in those counties. The primary issue concerns the constitutionality of said Act.

*Provisions of the Act.* Generally speaking, Act No. 2 provides a method whereby two or more adjoining counties can form a compact "for the purpose of engaging in joint efforts to secure and develop industry of mutual benefit," and to finance the same by issuing bonds under Amendment No. 49 of the Constitution. The Act provides for the establishment of an Inter-County Commission (hereafter called Commission) composed of one person from each county (appointed by the County Judge) and the other one (where only two counties are involved, as here) selected by the said two appointees. The Commission is empowered to make contracts and agreements necessary to secure and develop industry, to acquire property, to construct buildings, and to hold title (as trustee) for the counties. Any contract (where there is a bond issue) and any sale of property must be approved by the county court of each county.

Act No. 2 further provides that each county to the compact may "issue bonds under Amendment No. 49" to provide the necessary money, and the counties, by agreement, shall determine the proportion of the total cost of any project each one is to bear.

*The Compact.* Baxter and Marion Counties, through the judge and court of each, took the necessary legal steps to enter into a compact under the provisions of

Act No. 2. A provisional Commission was formed, an election in each county was called and held, and a provisional Lease Agreement was entered into with the Mar-Bax Shirt Co., Inc., looking to the establishment of a factory in a building to be erected on 25 acres of land in Baxter County near the Marion County line. Baxter County favored a bond issue by a vote of 2,378 to 1,375 and Marion's vote was 1,473 for and 437 against.

*Issues in Litigation.* After the previously mentioned steps had been taken, four separate suits were filed challenging the constitutionality of Act No. 2 and other aspects of the proceedings.

One suit in Baxter County was filed by a taxpayer against the County Judge, questioning the constitutionality of Act No. 2 as being in conflict with Amendment No. 49 and Article 7, § 28 of the Constitution. In this same suit there was an intervention (and cross-complaint) filed by taxpayers, naming as additional third parties defendants the sheriff and county clerk, and also the provisional members of the Commission. Still another suit was filed in Baxter County which for all purposes of this opinion was the same as the intervention.

The intervention asserts, among other things, that Act No. 2 violates Amendment No. 49, Article 7, § 28 and Article 16, §§ 5 and 6 of the Constitution, and that the Lease Agreement is not economically sound. These two suits were consolidated and now appear here as No. 2423.

In Marion County two similar suits were filed, applicable to that county. These suits were consolidated and now appear here as No. 2461. Cases No. 2423 and No. 2461 were consolidated for hearing on appeal. For the sake of convenience and clarity we will hereafter refer to those who first challenged the compact proceedings in each county as "appellants", to those who sought to uphold said proceedings as "appellees", and to the intervenors as "cross-appellants."

*Trial Below.* The trial court held in favor of appellees, upholding the constitutionality of Act No. 2, after deleting certain portions of the proposed Lease Agreement. Appellees have not appealed from these "deletions." We have used the word "proposed" and "provisional" in speaking of the compact, the Lease Agreement and the Commission because, as it developed during the trial below, legal confirmation depends on the outcome of this appeal. Testimony given at the trial by the two county judges was to the effect that confirmation will be forthcoming upon an affirmance of this court.

*The Issues.* Appellants contend that Act No. 2 violates Amendment No. 49 and also Article 7, § 28 of the Constitution. Cross-appellants make the same contention and in addition thereto they contend: (a) The expenditure by Marion County under the Lease Agreement is not an economical expenditure of money as provided by § 5 of Amendment No. 49; (b) The notice of election in Baxter County was not published as required by § 6 of said Amendment No. 49; and (c) Act No. 2 requires a compact before the bonds can be issued, and; (d) Marion County cannot issue bonds to erect a factory building in Baxter County.

*Amendment No. 49.* All of the arguments of appellants and of cross-appellants in this contention seem to be encompassed in one proposition, viz: Since Amendment No. 49 to the Constitution makes no provision for two counties to make a compact such as here attempted, Act No. 2, which does make such a provision, must necessarily and *ipso facto* be in violation of said Amendment. We do not agree that such conclusion is so easily deducible, and no decisions are cited to confirm it. Rather, we think, a broad view of the Amendment and the purpose of its adoption by the people tends to refute such conclusion. Before the adoption of Amendment No. 49 in 1948 no county (or city) had a constitutional right to lend its credit (vote bonds)—prohibited by the express terms of Article 16, § 1. Later, by Amendments to the Constitution (13 and 17 for example) this prohi-

bition was modified for certain specific purposes—such as to purchase rights-of-way, and to build courthouses, jails and hospitals. In each instance the purpose for modifying the prohibition (against lending credit) was definitely stated. Likewise, in adopting Amendment No. 49 the purpose was just as definitely stated and understood, viz: ". . . for the purpose of securing and developing industry." (§ 1 of No. 49.) For that "purpose" every county in the state was given the right to issue tax supported bonds. The question raised is: Do two counties, each having the right to issue bonds, have the right to form a compact (or go in together) to accomplish the same purpose for their mutual benefit? This right was given to them by the legislature in Act No. 2. To sustain appellants' and cross-appellants' contention they must take the position that the right to form such a compact is a right that springs from constitutional authority only. They have cited no authority, and we know of none, to sustain that position. As is well known, under our system of government the legislature represents the people and as such is the reservoir of all power not relinquished to the Federal Government or prohibited by the State Constitution. The right of counties to cooperate in a lawful undertaking for their benefit certainly has not been given away to our Federal Government, and it has not been prohibited by our State Constitution. As we see it, the legislature had the right to enact Act No. 2.

*Article 7, § 28 of the Constitution.* We are unable to agree with the argument that the project undertaken by Baxter and Marion Counties (under Act No. 2) violates the above section of the Constitution. It reads:

"The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. The county court shall

be held by one judge, except in cases otherwise herein provided."

As heretofore mentioned, all essential steps must be approved by the county court. No "tax" can be voted without the county court's approval, and the same is true of the "disbursement of money." The order of the trial court, which we approve, specified that the proceeds of the bonds should be turned over to the county courts and not to the Commission. We see no reason why the disbursement of such proceeds in this instance, under the general laws, should not be subject to the same safeguards as any other revenues. No actual abuse of these safeguards is before us at this time. It is not pointed out to us how two counties should encounter any more legal difficulties in disbursing bond proceeds than one county would have. The latter was approved in the case of *Wayland* v. *Maurice Snapp, County Judge,* 232 Ark. 57, 334 S. W. 2d 633, where an industry was established under said Amendment No. 49.

(a) There is no merit in the contention that the proceeds of the bonds will not be economically spent as required by § 5 of Amendment No. 49. This section reads:

"The governing body of the municipality or the County Court of the county shall exercise jurisdiction over the sale or exchange of any such bonds voted by the electors at an election held for that purpose and shall *expand* (expend) economically the funds so provided."

In the first place no part of the bond proceeds have been spent, and no evidence was introduced to show the money will not be spent economically. As has been heretofore pointed out, the County Courts will have jurisdiction over the proceeds of the bonds.

(b) It is here contended that the Notice of Election was not published as required by § 6 of Amendment No. 49. The objection is that the Notice was published only twice while the above section requires it to be published four times. To support the objection

attention is directed to Intervenors' Exhibit No. 4. But this Notice (given by the sheriff) is the one referred to in the first part of said Section 6, and its function is to let the people know an election will be held. It does not have to be published four times. Further down in the section there is another provision which requires that ''Notice of the election shall be given by the . . . County Judge of the county by advertisement weekly for at least four times . . .'' There is no contention that this latter notice was not properly given as required by Amendment No. 49.

(c) Again we can find no merit in the contention that Act No. 2 requires a ''compact'' before bonds can be issued under Amendment No. 49. It must be understood that the word ''compact'' used in Act No. 2 refers to no single written agreement or contract, but generally to the undertaking to proceed jointly in an effort to secure industries. There is no contention that Baxter and Marion Counties have not taken every step required by said Act and Amendment up to this time. Further steps must necessarily await the conclusion of this litigation. Also, we think, appellants and cross-appellants attach undue significance to the words ''issue bonds.'' Undoubtedly the legislature had in mind the issuance of bonds that were legal and binding on the taxpayer, and not to the mere preparation and printing of bonds. They point out no alternative procedure, and we know of none, that would more fully comply with Act No. 2 than the procedure here followed.

(d) Finally, and somewhat more troublesome, is the contention that bonds issued by Marion County (under Amendment No. 49) cannot be used to erect (or help erect) a (factory) building in Baxter County. This contention is based on the wording in § 1 of the Amendment which reads:

''Any city of the first or second class, any incorporated town, and any county, may issue, by and with the consent of the majority of the qualified electors of said municipality or county voting on the question at an election held for the purpose, bonds in sums approved

by such majority at such election for the purpose of securing and developing industry within or near the said municipality holding the election, or within the county holding the election.''

Special significance is attached to the phrase ''for . . . securing and developing industry . . . within the county holding the election.'' Of course, in this case the election was held in Marion County and the *building* is to be built in Baxter County. This circumstance, they say, shows a violation of the plain provisions of the above section. It must be conceded that, if the words ''securing and developing industry'' means (necessarily) the same as the words ''securing and developing a factory building,'' this case must be reversed.

However, we do not feel that we are obligated to, or that we should, be bound to such a strict interpretation of the Amendment. We have heretofore briefly mentioned the purpose for the adoption of Amendment No. 49. It is certainly reasonable to assume that the people's principal concern was to create jobs and thus prevent unemployment and loss of· population rather than to assure the erection of a building. The accepted meaning of the word ''industry'' as shown by Webster's New International Dictionary, is ''systematic labor or habitual employment; esp., human exertion employed for the creation of value.'' Therefore, if it can reasonably be said (and we think it can) that the money expended by Marion County (in this instance) will furnish employment to its citizens, the Constitution has not been violated in letter or spirit. Manifestly the people of Marion County felt that an industry domiciled only two miles from the county border would be beneficial and would likely furnish them with employment, because they approved it by a larger percentage of votes than did the people of Baxter County.

In liberally construing the provisions of Amendment No. 49 (if a liberal construction is required) to effectuate its acknowledged purpose, we are following the well recognized rule of constitutional interpretation as it is clearly stated in the case of *Myhand* v. *Erwin,*

231 Ark. 444, 330 S. W. 2d 68, which construed this same Amendment. It was there stated:

"This court has been liberal in its construction of constitutional amendments, so as to carry out the obvious purpose of the people adopting the amendment."

It is our conclusion therefore from what we have heretofore said that the decree of the trial court must be, and it is hereby, affirmed.

Affirmed.

McFADDIN and JOHNSON, JJ., dissent.

GEORGE ROSE SMITH, J., not participating.

ED. F. McFADDIN, Associate Justice, dissenting. These two cases were consolidated in this Court. The first is from Baxter Chancery Court, and the second is from Marion Chancery Court. My dissent goes only to the case from the Marion Chancery Court, styled *Burnes* v. *King,* No. 2461. I am of the opinion that a permanent injunction should be granted against the issuance of the bonds by the Marion County Court because the industry is not to be "within the county."

It was conceded by appellee in the oral argument that Amendment No. 49 is the only authority for Act No. 2; and that Act No. 2 is the only authority under which Marion County is issuing the challenged bonds. I concede that Act No. 2 is broad enough to cover what was attempted here; but I maintain that Amendment No. 49 is not broad enough to cover Act No. 2. Here is the germane language of Amendment No. 49:

". . . any county may issue, by and with the consent of the majority of the qualified electors of said . . . county voting on the question . . . bonds . . . for the purpose of *securing and developing industry . . . within the county holding the election."* (Emphasis supplied.)

Two points stand out: the bonds are for the purpose of (1) securing and developing industry (2) within the county. I am firmly of the opinion that obtaining and developing a manufacturing plant in Baxter County is not

an *industry within Marion County*. All Marion County can hope to gain is an increase in population to result from people coming to Marion County to work in Baxter County. That is fine; but it is not within the provisions of the Constitutional Amendment No. 49.

The majority opinion defines industry as " . . . systematic labor or habitual employment; esp. human exertion employed for the creation of value." Even accepting the definition, still the Amendment 49 says that such systematic labor or habitual employment must be *within the county*. In the case at bar, the labor and employment is to be in Baxter County and not in Marion County: so the Constitutional requirement is not met.

That the framers of Amendment No. 49 recognized the force of the words, "within the county," is clear: because, in regard to municipalities the amendment says, "within or near said municipality," whereas, in speaking of counties the amendment says, "within the county." Yet the Majority is in effect saying, as regards a county, that "within" means "within or near." If this holding of the Majority in this case should be extended to our venue statutes, where would be the end to the confusion?

The words, "within the county," mean what they say; and I refuse to torture the words to achieve a different meaning, even to help two well meaning Counties obtain an increase in population in one and a plant in the other. As I see it, the Chancery decree should be affirmed in the Baxter County case, but reversed in the Marion County case.

JIM JOHNSON, Associate Justice, dissenting. I am unable to agree with the majority opinion because as I see it there are two glaring constitutional defects in Act 2 of the First Extraordinary Session of the Sixty-Second General Assembly. I think it would be difficult to imagine a more patent conflict with Amendment No. 49 than that contained in the proposal to establish a factory to be erected on 25 acres of land in Baxter County. The majority has not simply given a liberal interpretation to Amendment No. 49. Instead it has strained the definition of the

term "industry" beyond reason and it has misapplied the doctrine that the Legislature has the power to do anything which is not prohibited by the Constitution and adopts an interpretation of Act 2 which would permit, for example, the establishment of a factory at Damascus in Faulkner County under the terms of a compact between Faulkner County and Perry County, in spite of the fact that Damascus is in the extreme northern part of Faulkner County and accessible to the inhabitants of Perry County only by way of Toad Suck Ferry or by a circuitous highway route through either Conway County or Pulaski County. Going further, the majority's interpretation of Act 2 would permit the adjoining counties of Little River and Miller to enter into a compact under which a factory could be constructed in Oklahoma, Texas, or Louisiana, because if the majority's understanding of the term "industry" is correct, jobs would be created in these bordering states in which the inhabitants of Little River County and Miller County could find employment and thereby benefit. If these examples seem absurd, the fault lies wholly with the basic misconception of the meaning of the Constitution on which the majority proceeds.

The majority's theory that the Legislature has all legislative power except where limited expressly or by implication by the Constitution is undoubtedly correct. The fallacy lies, however, in its application. The original Constitution, Article 12, Sec. 5, laid down a flat prohibition on the lending of credit by a county. Certain express exceptions have been made as in Amendments 10, 13, 18, 32 and 38. Amendment 49 is nothing more than an additional exception to the general constitutional prohibition on the lending of credit by a county. In other words, Amendment 49 removes from the prohibited area the lending of credit by a county "for the purpose of securing and developing industry . . . within the county . . ." The conclusion is inescapable that the general prohibitions on the lending of credit by a county prohibit what is sought to be done by Act 2 unless Amendment 49, either expressly or by necessary implication, has removed the prohibition for the purposes stated therein. It is clear, then, that the

theory of the majority that the Legislature may do all things which it is not prohibited from doing is irrelevant to the case at bar. In my opinion, this case presents the following questions: Does Amendment 49 permit the issuance of bonds in the county for the purpose of establishing an industry in another county? Does "within the county" mean what it says? If it does not mean what it says, then how far beyond the borders of a county may the industry be established and still comply with the constitutional restriction? In my view, the Constitution does mean what it says. The industry must be established within the county. The word "within" means physically within the limits of the county. The word "industry" means what common language has always dictated, i.e., a factory, a plant, a complexity of physical manufacturing or processing operations having a more or less well defined center. It does not mean the indirect effect of such an establishment. For, if this were true, it is no far cry to hold that the General Motors Corporation industry is located in Pulaski County, because certainly the economic effects of that industry are of great benefit to the inhabitants of Pulaski County. The decision of the majority espouses the "trickle down" theory of economics, the logical conclusion of which is that it makes no difference where an industry (factory, plant, etc.), is established so long as the benefits therefrom in some way will accrue to the inhabitants of the county involved. Thus, I am convinced that the majority has made a radical departure from the plain meaning of Amendment 49 and other relevant prohibitions of the Constitution, a departure without precedent and one moreover which contains the seeds of destruction insofar as the system of constitutional limitations on the lending of credit by counties is concerned.

Not only do I believe the majority has made a fundamental error in its construction of Amendment 49, I think that it has completely ignored the true meaning of Article 7, Section 28 of the Constitution. In my judgment Section 2 of Act 2 is an obvious attempt to delegate the powers of

the County Court to a three-member commission. Under this section, the Commission is empowered to hold title as trustee to any property or construction with the proceeds of bonds which may be issued. They are empowered "to take all steps and to make and enter into all contracts and agreements necessary or incidental to the securing and developing of industry that is mutually beneficial to the parties to the compact" subject to the approval of the County Court. The Commission may employ engineers, architects, inspectors, managers, attorneys and such other employees as in its judgment may be necessary in the execution of its powers and duties and may fix their compensation. All expenses and liabilities incurred in carrying out the duties and powers of the Commission may be paid from available funds, including without limitation, funds obtained from the issuance of bonds or from revenues derived from facilities constructed or acquired from the proceeds of such bonds." The Commission is empowered "after the construction or acquisition of any lands, buildings or facilities, and subject to the limitations contained in this Act . . . to reconstruct, extend, equip, improve, operate, maintain, sell, lease, contract concerning, or otherwise deal in or dispose of the said lands, buildings or facilities." All of this the Commission is empowered to do in the face of the following constitutional language:

"The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. The county court shall be held by one judge, except in cases otherwise herein provided." Art. 7, Sec. 28.

These purported powers of the Commission created by Act 2 are exactly the kinds of powers which this Court held belonged exclusively to the County Court in the case of *Campbell, County Judge,* v. *Little Rock School Dist., et al.,* 222 Ark. 615, 262 S. W. 2d 267. The majority ap-

parently has assumed that so long as the County Court has some control over the expenditure of funds there is no unlawful delegation. This is a direct reversal of the principles stated in the *Campbell* decision. The Commission under Act 2 is given discretionary power, not merely the duty of performing ministerial functions. If the system of management by County Courts contemplated by the Constitution is to be maintained, then Act 2 must fall. Article 7, Section 28, and Act 2 cannot simultaneously be the law.

For the reasons stated above, I respectfully dissent.