The Honorable Charlie Cole Chaffin State Senator Route 3, Box 1057 Benton, AR 72015
Dear Senator Chaffin:
This is in response to your request for an opinion on the following questions:
 1. House Bill 1379 was passed by the General Assembly to give Game and Fish Commission employees the same arrest powers as other law enforcement officers. Is House Bill 1379 constitutional?
 2. Does Amendment 35 to the Arkansas Constitution empower the Game and Fish Commission with authorization to declare walk-in areas on public land which discriminate against the handicapped?
 3. Does the Game and Fish Commission control hunting rights on private property or does the property owner?
 4. Does Amendment 35 to the Arkansas Constitution authorize the Game and Fish Commission to serve special interest groups?
 5. As a state agency and operating on public funds, does Amendment 35 authorize the Game and Fish operated hatcheries to stock private waters not accessible to the public?
It is my opinion that the answer to your first question is "yes". This conclusion is based upon an interpretation of House Bill 1379 (Act 715 of 1989), in light of existing constitutional provisions. There is no case law on point.
Act 715 of 1989 amends prior law to include "full-time wildlife officers of the Arkansas Game and Fish Commission" within the terms "peace officer" and "law enforcement officer," so as to invest these officers with arrest powers other than as private persons or Game and Fish Commission ("Commission") employees. Acts 1979, No. 715, 1. This act therefore reflects an expansion of the arrest powers of Commission employees as set forth under Amendment35 to the Arkansas Constitution, which states in pertinent part that "[a]ll employed personnel may make arrests for violation of the game and fish laws." Const. Ark. Am. 35, 8.
It must be initially recognized in addressing your first question that the Arkansas Constitution is not a grant of enumerated powers or an enabling act, but rather it is a restraining act. Jones v. Mears, 256 Ark. 825, 510 S.W.2d 857 (1974). It is well-settled under our form of government that the legislature is the reservoir of all power not relinquished to the federal government or prohibited by the state constitution. Hackler v. Baker, County Judge, 233 Ark. 690, 346 S.W.2d 677 (1961). Thus, the legislature has the power to enact any law that is not expressly or by necessary implication prohibited by the Constitution of Arkansas. Cook v. Walters Dry Goods Co., 212 Ark. 485, 206 S.W.2d 742 (1948).
Amendment 35 grants the Commission broad power in the area of wildlife preservation, and authorizes the enforcement of game and fish laws by its employees. It is clear that these persons do not, by virtue of Amendment 35, have other arrest powers. While one might contend that the language of Amendment 35 in this regard impliedly denies other arrest powers, it must be recognized that a legislative enactment will not be declared unconstitutional unless it is clearly at variance with the Constitution. Baratti v. Koser Gin Co., 206 Ark. 813, 177 S.W.2d 750 (1944). If it is possible for the courts to construe a statute so as to meet the test of constitutionality, they will do so. Taylor v. Finch, 288 Ark. 50,701 S.W.2d 377 (1986). All reasonable doubt must be resolved in favor of constitutionality. Neal v. Still, 248 Ark. 1132,455 S.W.2d 921 (1970). These precepts compel the conclusion that Section 8 of Amendment 35, which does not on its face purport to expressly preclude other arrest powers, does not render Act 715 of 1989 unconstitutional. The constitutional provision does not state that Game and Fish Commission employees "may only make arrests for violation of the game and fish laws." Nor, in my opinion, is this result reached by necessary implication. There is authority for the proposition that a court will look to the history of the times in ascertaining the people's intention. Carter v. Cain, 179 Ark. 79, 14 S.W.2d 250 (1929). It may therefore be significant to note in this instance that at the time of adoption of Amendment 35 (July 1, 1945), the law provided for the appointment of game wardens ". . . . necessary to a proper enforcement of the laws of the state looking to the protection of game, fish, fur-bearing animals, and other wildlife." A.C.A.15-41-201. These persons were granted the power to ". . . apprehend persons detected violating any of the laws of the state enacted for the protection of . . . wildlife. . . ." Id; see also A.C.A.15-41-204 and 15-41-205. Amendment 35 therefore confirmed and continued existing law in this regard. A different interpretation of the Constitution might be required had the existing law provided for more expansive arrest powers of game wardens. Amendment 35 could then be viewed as a retraction of those powers. This is, however, not the case.
The answer to your second question is in all likelihood "yes," as a matter of state law, so long as the facts indicate that the Commission's action falls within the broad powers accorded that body under Amendment 35, and is not arbitrary or an abuse of its discretion. See, e.g., Ark. State Game Fish Comm'n. v. Stanley,260 Ark. 176, 538 S.W.2d 533 (1976). The fact that the action taken negatively impacts the handicapped would probably not in itself constitute an abuse of discretion. The Arkansas Supreme Court has consistently reiterated the Commission's extensive authority and discretion Under Amendment 35. And case precedent indicates that the Commission will not be deemed to have exceeded its authority where there is no violation of a "direct or positive mandate of the constitution." Farris v. Ark. State Game Fish,228 Ark. 776, 784, 310 S.W.2d 231 (1958).
This is not to say, however, that the Commission's action in this regard would have no implications in connection with certain federal mandates under the Rehabilitation Act of 1973 (29 U.S.C 706), commonly referred to as the Civil Rights Law for the Handicapped. Section 504 of this act states that: "No otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance." Whether or not Section 504 is implicated will involve a factual review, with reference to the specific circumstances in each instance. Procedures for effecting compliance with Section 504 include suspension or termination of Federal financial assistance.
In response to your third question, please note that I have enclosed Attorney General Opinion Number 86-225 wherein it was concluded that the Commission does not have the responsibility or authority to provide public access to fish or wildlife resources on privately-owned lands. Thus, if this question relates to public access to private property, it is my opinion that the property owner controls hunting rights in that regard.
The power of the Commission in connection with the protection and conservation of the state's wild life resources must, however, be recognized. See, e.g., Farris v. Ark. State Game Fish, supra (action of the Commission in prohibiting the sale of game fish raised in private waters is a valid exercise of the police powers of the state). The Arkansas Supreme Court has stated the following with regard to the Commission's authority:
 Under [Sections 1 and 8 of Amendment 35] we hold that the Commission has been given full and complete administrative power and authority to promulgate rules and regulations necessary to the conservation and preservation of all wildlife including not only the power to establish a bag limit, set seasons in which to hunt and fish and the penalty for violations but also the power to levy a license fee on all hunting dogs. . . .
State v. Casey, 225 Ark. 149, 152, 279 S.W.2d 819 (1955).
The hunting rights are, therefore, in many ways subject to the Commission's control. The specific facts and circumstances must be considered.
Your fourth question cannot be answered as posed, in the absence of reference to specific factual settings. The Commission's authority, and the limits of that authority, have been summarized by the Arkansas Supreme Courts follows: The Commission has a wide discretion within which it may determine what the public demands, and what measures are necessary to secure and promote such requirements. The only limitation upon this power to formulate these rules and regulations, which tend to promote the protection and conservation of the wild life resources of the state, and which tend to promote the health, peace, morals, education, good order and welfare of the public is that the rules and regulations must reasonably tend to correct some evil, and promote some interest of the commonwealth, not violative of any direct or positive mandate of the constitution. . . . The commission, as trustee for the people of this state, has the responsibility and is charged with the duty to take whatever steps it deems necessary to promote the interest of the Game and Fish Conservation Program of this state; subject only to constitutional provisions against discrimination, and to any valid exercise of authority under the provisions of the Federal Constitution.
Farris, 228 Ark. at 734.
It is therefore apparent that a rule or regulation which has the effect of favoring some group over another may be within the Commission's authority, if the above test is met.
Your final question must also be addressed with reference to the foregoing statement of the Commission's powers. The Commission's authority and discretion in the area of preservation and conservation of the state's wildlife resources is well-established. It has been stated that the Commission's action will be upheld if it is not ultra vires and not ". . . arbitrary or capricious, unreasonable or wantonly injurious, in bad faith or an abuse of its discretion." Ark. State Game Fish Comm'n. v. Stanley, supra, 260 Ark. at 178. It is therefore my opinion that the Commission will not be deemed to have exceeded its powers unless it is clearly shown that the stocking of private waters not accessible to the public constitutes an abuse of its broad discretionary powers in matters of conservation. Farris, supra. This will involve a factual inquiry in each instance.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.