Mr. Barry Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted nine similar measures, seven of which I rejected due to ambiguities in the text of your proposed amendments. See Op. Att'y Gen. Nos. 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. My office has revised and certified popular names and ballot titles for two similar measures, as evidenced by Op. Att'y Gen. Nos. 2001-129 and 2001-196. You have since made additional changes to your measure and submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT TO AUTHORIZE BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS, FOR PROFIT GAMBLING ONLY BY THE" DIAMOND STATE CASINOS, LIMITED" AS A CORPORATION AND THOSE PERSONS HIRED AND SUBCONTRACTED AS INDEPENDENT CONTRACTORS TO OPERATE GAMBLING AND LOTTERIES OPERATED BY A STATE COMMISSION ESTABLISHED TO REGULATE BINGO, RAFFLES AND GAMBLING
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING THE OPERATION OF BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED OR REGISTERED TO DO BUSINESS IN THE STATE WITH NO PERSON UNDER AGE 18 PERMITTED TO PLAY BINGO OR RAFFLES; PROVIDING EACH SIGNATURE THE SECRETARY OF STATE COUNTS AS VALID TO PLACE THIS AMENDMENT ON THE BALLOT WITH EXCEPTION OF A CANVASSER'S SIGNATURE ON A PETITION AS PETITIONER WITH THEIR SIGNATURE ON THAT PETITION AS CANVASSER SHALL BE COUNTED AS 2 SHARES OF STOCK WITH EACH SHARE OF STOCK BEING 1 VOTE WITH BARRY LEE EMIGH AS AUTHOR AND SPONSOR OF THIS AMENDMENT RECEIVING 1 OF 2 SHARES OF STOCK AS A STOCK HOLDER FOR EACH SIGNATURE A CANVASSER OBTAINS WITH THE CANVASSER RETAINING THE OTHER SHARE OF STOCK AS A STOCK HOLDER WITH ALL SHARES OF STOCK BEING NUMBERED, REGISTERED AND ISSUED AS CERTIFICATES OF STOCK TO THE STOCK HOLDERS BY THE" DIAMOND STATE CASINOS, LIMITED" AS A CORPORATION WITH SUCH CERTIFICATES OF STOCK BEING TRANSFERABLE WITHOUT RESTRICTION BY THE GENERAL ASSEMBLY; EMPOWERING BARRY LEE EMIGH AS THE AUTHOR AND SPONSOR OF THIS AMENDMENT TO ORGANIZE A CORPORATION AS THE INCORPORATOR TO BE ENTITLED THE "DIAMOND STATE CASINOS, LIMITED" WITH SAID CORPORATION ABIDING BY ALL THE RULES, LAWS AND REGULATIONS OF THE STATE REGARDING CORPORATIONS NOT OTHERWISE PROVIDED FOR DIFFERENTLY WITHIN THE PROVISIONS OF THIS AMENDMENT; AUTHORIZING BARRY LEE EMIGH AS THE INCORPORATOR TO INITIALLY APPOINT 6 PERSONS AS CORPORATE BOARD DIRECTORS WITH THE STOCK HOLDERS OF THE "DIAMOND STATE CASINOS, LIMITED" AT ANY TIME THEREAFTER EMPOWERED TO DISMISS AND ELECT ANY ONE OR MORE OF THE CORPORATE BOARD DIRECTORS WITH ALL OTHER RIGHTS, AND DIVIDEND PAYMENTS PROVIDED THE STOCK HOLDERS AS PROVIDED BY THE LAWS, RULES AND REGULATIONS OF THE STATE REGARDING ALL CORPORATIONS INCORPORATED IN THE STATE; AUTHORIZING ONLY THE "DIAMOND STATE CASINOS, LIMITED" UPON INCORPORATION IN THE STATE TO OPERATE, HIRE AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITHOUT LICENSE, FEE OR PERMIT BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITH GAMBLING OPERATED WITHIN THE INTERIOR AREA OF NOT MORE THAN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF SEBASTIAN, JEFFERSON, PULASKI, GARLAND, MILLER, CRITTENDEN, MISSISSIPPI, BENTON AND QUACHITA WITH SUCH STRUCTURE LOCATED WITHIN THOSE COUNTIES OR WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH NO PERSON UNDER AGE 21 PERMITTED TO GAMBLE; AUTHORIZING ONLY THE "DIAMOND STATE CASINOS, LIMITED" AND THOSE PERSONS HIRED AND SUBCONTRACTED AS INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING TO SELL AND SERVE COMPLIMENTARY ALCOHOLIC BEVERAGES WITHOUT LICENSE, FEE OR PERMIT BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR GAMBLING ONLY DURING THE OPERATION OF GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED) WITH NO PERSON UNDER AGE 21 PERMITTED TO CONSUME ALCOHOLIC BEVERAGES; REQUIRING THE "DIAMOND STATE CASINOS, LIMITED" AND THOSE PERSONS HIRED AND SUBCONTRACTED AS INDEPENDENT CONTRACTORS TO OPERATE GAMBLING TO PAY ANY AND ALL STATE AND LOCAL TAXES AS APPLICABLE AND TO OBTAIN AND PAY FOR ALL OTHER LICENSES AND PERMITS NOT EXEMPTED WITHIN THE PROVISIONS OF THIS AMENDMENT AS REQUIRED; AUTHORIZING THE LEGAL SHIPMENT OF GAMING DEVICES BY THE "DIAMOND STATE CASINOS, LIMITED" AS A CORPORATION AND THOSE PERSONS HIRED AND SUBCONTRACTED AS INDEPENDENT CONTRACTORS TO OPERATE GAMBLING BY THE "DIAMOND STATE CASINOS, LIMITED"; DEFINING "GAMBLING" AS THE RISKING OF MONEY ON A CHANCE BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH COMMONLY CALLED GAMBLING AND GAMING DEVICES TO INCLUDE ANY KIND OF ROULETTE WHEELS, ANY KIND OF SLOT MACHINES, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS AND DICE USED IN ANY MANNER AND ANY KIND OF PARI-MUTUEL WAGERING; DEFINING "STRUCTURES" AS THE PLURAL OF STRUCTURE WITH STRUCTURE BEING ANY KIND AND SIZE OF BUILDING TO INCLUDE ANY ATTACHED ADDITIONS TO BE CONSIDERED PART OF THAT BUILDING AND TO INCLUDE WITHIN THIS DEFINITION ANY KIND AND SIZE OF ANCHORED WATER VESSEL AS A STRUCTURE; EMPOWERING THE GENERAL ASSEMBLY TO ESTABLISH AND REGULATE A COMMISSION TO REGULATE BINGO AND RAFFLES OPERATED BY NON-PROFIT ORGANIZATIONS, TO REGULATE GAMBLING OPERATED BY THE "DIAMOND STATE CASINOS, LIMITED" AND THOSE PERSONS HIRED AND SUBCONTRACTED AS INDEPENDENT CONTRACTORS TO OPERATE GAMBLING AND FOR THE COMMISSION TO OPERATE A STATE LOTTERY IN ANY MANNER AND COOPERATE TO OPERATE ANY NUMBER OF OTHER LOTTERIES IN ANY MANNER IN COMBINATION WITH ANY OTHER STATE AND STATES; MAKING THE PROVISIONS OF THE AMENDMENT SELF EXECUTING AND EFFECTIVE IMMEDIATELY UPON PASSAGE EXCEPT AS OTHERWISE PROVIDED IN THE AMENDMENT; MAKING THE AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Pluggev. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic ActionCommittee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citingLeigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to several ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 2, subsection 2, of your proposed amendment states that you are "empowered" to organize a corporation to be entitled "Diamond State Casinos, Limited." I am uncertain whether you are under any obligation to form this corporation if the amendment is adopted. Your proposed popular name states in relevant part that the amendment authorizes" For Profit Gambling Only by the `Diamond State Casinos, Limited' as a Corporation. . . ." Section 2, subsection 1, then begins with the assignment of shares of stock to be issued by the corporation. Read together, these provisions give the impression that there will be such a corporation if the amendment passes. Yet I believe some uncertainty remains regarding the corporation's formation, given the language regarding your powers as author and sponsor of the amendment. In my view, the voters must be fully informed regarding the organization of this corporation, which will be vested with the exclusive power to operate gambling and to hire others to operate gambling.
 2. Section 2, subsection 3, of your proposal states that immediately upon incorporation, "only the `Diamond State Casinos, Limited' as a corporation shall be permitted to operate gambling. . . ." "Gambling" is defined in Section 3 as "the risking of money between two, or more, persons on a chance where one must be loser and the other gainer . . . and pari-mutuel wagering of any kind." (Emphasis added). These provisions raise ambiguities with respect to changes in current law that would be brought about by your amendment. Currently, Amendment 46
to the Arkansas Constitution provides:
 "Horse racing and pari-mutuel wagering thereon shall be lawful in Hot Springs, Garland County, Arkansas, and shall be regulated by the General Assembly."
 The question, therefore, is whether this amendment will remain in effect if your proposed amendment is adopted. Horse racing and pari-mutuel wagering thereon is currently regulated by the Arkansas Racing Commission under A.C.A. §§ 23-110-101 et seq., the Arkansas Horse Racing Law. See A.C.A. § 23-110-204 (giving the Commission "sole jurisdiction over the business and sport of horse racing in this state where the racing is permitted. . . .") A question also arises regarding dog racing and pari-mutuel wagering thereon, which is currently regulated by the Arkansas Racing Commission pursuant to A.C.A. §§ 23-111-101 et seq., the Arkansas Greyhound Racing Law.
 If, indeed, it is your intent to vest the "Diamond State Casinos, Limited" with the exclusive authority to operate pari-mutuel wagering, it is my opinion that this must be clearly conveyed to the voter, along with the resultant change(s) in current law. These potential changes undoubtedly constitute essential facts that would give the voter serious ground for reflection.
 3. Section 4 states that the amendment "shall be self-executing. . . ." It then continues, however, to state that "[t]he General Assembly, and any and all state or local rulemaking authorities, shall be required to make all other and further laws and regulations to the enforcement of [the amendment]." The intent of these seemingly conflicting sentences is unclear, in my view. A "self-executing" law is ordinarily viewed as one that is intended as a present enactment, complete in itself as definitive legislation, and that does not contemplate subsequent legislation to carry it into effect. See generally Myhand v. Erwin, 231 Ark. 444, 452, 330 S.W.2d 68 (1959). Because your measure does appear to contemplate subsequent legislation (see Section 7 regarding a regulatory commission), I am uncertain whether it is accurate to suggest in the ballot title that the amendment is self-executing. Because I am uncertain as to your actual intent, however, I am unable to suggest any changes to your proposed ballot title on this point.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh